IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

---

TEXAS GUN RIGHTS, INC.
and NATIONAL ASSOCIATION
FOR GUN RIGHTS INC.,

        Plaintiffs,

        v.                                              Case No. 4:23-cv-00578-O

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES,

        Defendant.

---

## PLAINTIFFS' BRIEF IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

---

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

FACTUAL AND LEGAL BACKGROUND ..................................................................... 2

   I.   The Regulation of "Rifles" under Federal Law ......................................................... 2

   II.  Pistols with Stabilizing Braces ................................................................................ 3

   III.  ATF's Prior Positions Regarding Stabilizing Braces ............................................... 4

   IV.  The New Rule ............................................................................................................ 6

   V.   Plaintiffs ................................................................................................................... 7

ARGUMENT AND AUTHORITIES .............................................................................. 8

   I.   Plaintiffs are likely to succeed on the merits .......................................................... 8

       A.  The Rule violates the Second Amendment ......................................................... 8

       B.  The Rule is invalid because it is lawmaking, and therefore violates the Separation of Powers and the nondelegation doctrine .......................................... 10

       C.  The Rule conflicts with the federal definition of "rifle." ................................... 13

           1.  The statutory definition of "rifle" is plain and unambiguous ......................... 14

           2.  The Rule should get no deference ................................................................... 15

           3.  Even if there were ambiguity with the statute, ATF cannot interpret that ambiguity to increase criminal liability. ....................................................... 16

       D.  The Rule is arbitrary and capricious ................................................................. 17

       E.  The Rule is void for vagueness .......................................................................... 18

   II.  Plaintiffs will suffer irreparable harm if an injunction is not granted. ......................... 19

   III.  The public interest and balance of harms favors an injunction. ................................... 20

CONCLUSION ............................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Advoc. Health Care Network v. Stapleton,*
   581 U.S. 468 (2017)................................................................ 15

*Britto v. ATF,*
   No. 2:23-cv-19-z (N.D. Tex. May 31, 2023) ................................. 1

*Cargill v. Garland,*
   57 F.4th 447 (5th Cir. 2023) .......................................... 2, 16

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
   467 U.S. 837 (1984)................................................................ 15

*D.C. v. Heller,*
   554 U.S. 570 (2008)................................................................ 10

*Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.,*
   710 F.3d 579 (5th Cir. 2013) ................................................. 8

*DOT v. Assoc. of Am. Railroads,*
   575 U.S. 43 (2015)................................................................. 13

*F.C.C. v. Fox Television Stations, Inc.,*
   556 U.S. 502 (2009)................................................................ 17

*F.C.C. v. Fox Television Stations, Inc.,*
   567 U.S. 239 (2012)................................................................ 18

*Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.,*
   968 F.3d 454 (5th Cir. 2020), as revised (Aug. 4, 2020)................................. 15

*Industrial Union Dept., AFL–CIO v. American Petro. Inst.,*
   448 U.S. 607 ........................................................................ 11

*Jackson v. U.S. Dep't of Hous. & Urb. Dev.,*
   38 F.4th 463 (5th Cir. 2022) ................................................. 13

*Janvey v. Alguire,*
   647 F.3d 585 (5th Cir. 2011) ................................................. 19

*Kisor v. Wilkie,*
   139 S. Ct. 2400 (2019)........................................................... 15

*Louisiana v. Horseracing Integrity & Safety Auth. Inc.,*
   No. 6:22-cv-01934, 2022 WL 2960031 (W.D. La. July 26, 2022)................................. 19

*McDonald v. City of Chicago, Ill.,*
   561 U.S. 742 (2010)................................................................. 9

*Miss. Power & Light Co. v. United Gas Pipe Line,*
   760 F.2d 618 (5th Cir. 1985) ................................................. 8

*Mock v. Garland,*
   No. 23-10319 (5th Cir. May 23, 2023) ...................................... 1

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ........................................................................................ 17

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
    142 S.Ct. 2111 (June 23, 2022) ............................................................. 8, 9, 10

*NFIB v. OSHA,*
    142 S.Ct. 661 (Jan. 13, 2022) ......................................................................... 12

*Nken v. Holde*r,
    556 U.S. 418 (2009) .................................................................................... 8, 20

*Opulent Life Church v. City of Holly Springs, Miss.,*
    697 F.3d 279 (5th Cir. 2012) ......................................................................... 19

*Robinson v. Shell Oil Co.,*
    519 U.S. 337 (1997) ....................................................................................... 14

*Schelske v. Austin,*
    No. 6:22-CV-049-H, 2022 WL 17835506 (N.D. Tex. Dec. 21, 2022) ........... 20

*Schism v. U.S.,*
    316 F.3d 1259 (Fed. Cir. 2002) ..................................................................... 14

*Second Amendment Foundation v. ATF,*
    No. 3:21-cv-116-B (N.D. Tex. May 25, 2023) ................................................. 1

*State v. Biden,*
    10 F.4th 538 (5th Cir. 2021) ......................................................................... 20

*Texas v. ATF,*
    No. 6:23-cv-13 (S.D. Tex. May 31, 2023) ................................................. 1, 19

*U.S. v. Thompson/Center Arms Co.,*
    504 U.S. 505 (1992) ....................................................................................... 16

*United States v. Cox,*
    906 F.3d 1170 (10th Cir. 2018) ....................................................................... 9

*United States v. Rahimi,*
    No. 21-11001, 2023 WL 1459240 (5th Cir. Feb. 2, 2023) ............................... 1

*United States v. Transocean Deepwater Drilling, Inc.,*
    767 F.3d 485 (5th Cir. 2014) ......................................................................... 13

*VanDerStok v. Garland,*
    No. 4:22-CV-00691-O, 2022 WL 4809376 (N.D. Tex. Oct. 1, 2022) ............ 19

*W. Virginia v. EPA,*
    142 S.Ct. 2587 (June 30, 2022) ................................................................ 2, 11

*Wayman v. Southard,*
    10 Wheat. 1 (1825) ........................................................................................ 11

**Statutes**

18 U.S.C. § 921 ................................................................................................ 3, 14

26 U.S.C. § 5811 ........................................................................................ 3

26 U.S.C. § 5841 ........................................................................................ 2

26 U.S.C. § 5845 .................................................................................. passim

26 U.S.C. § 5871 ............................................................................... 3, 7, 16

**Federal Regulations**

86 Fed. Reg. 30826 (June 10, 2021) .......................................................... 3

88 Fed. Reg. 6478 (January 31, 2023) ................................................. passim

**Constitutional Provisions**

U.S. Const. art. I ..................................................................................... 11

## INTRODUCTION

On May 23, 2023, the Fifth Circuit granted a preliminary injunction preventing enforcement of the rule issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF'") governing stabilizing braces. *See Mock v. Garland*, No. 23-10319 (5th Cir. May 23, 2023). Both the Dallas Division and Amarillo Division of this Court did the same. *See Second Amendment Foundation v. ATF*, No. 3:21-cv-116-B (N.D. Tex. May 25, 2023) (Boyle, J.); *Britto v. ATF*, No. 2:23-cv-19-z (N.D. Tex. May 31, 2023) (Kacsmaryk, J.). The Southern District of Texas has also enjoined the rule. *Texas v. ATF*, No. 6:23-cv-13 (S.D. Tex. May 31, 2023) (Tipton, J.).

These four injunctions, however, only apply to the individual plaintiffs in some cases, *see, e.g., Britto*, ECF No. 59 at 2, and, in other cases with associations as plaintiffs, those associations and their members. *Mock,* No. 23-10319 (5th Cir. May 26, 2023), ECF No. 78-2 (clarifying that injunction applies to plaintiff-association's "customers and members" and "individual plaintiffs' resident family members."); *Texas*, ECF No. 51 at 7 (same); *SAF*, ECF No. 65, at 2 (same). The rule is in effect for the rest of America.

Having now filed their own lawsuit in this Court, Plaintiffs seek a preliminary injunction protecting their members. As described below, ATF's rule governing stabilizing braces is illegal and unconstitutional, and while this lawsuit is pending, a preliminary injunction is necessary to protect Plaintiffs and their members.

\* \* \* \*

When considering a federal gun regulation, "the Government must point to historical precedent from before, during, and even after the founding that evinces a comparable tradition of regulation." *United States v. Rahimi,* No. 21-11001, 2023 WL 1459240, at \*5 (5th Cir. Feb. 2, 2023) (citation omitted). To satisfy the Second Amendment, a court is not "obliged to sift the

historical materials for evidence to sustain [the regulation]. That is the Government's burden." *Id.* (citation omitted).

Here, ATF cannot sustain this high burden. ATF has not, and cannot, point to any historical evidence supporting a tradition of regulating pistols with stabilizing braces before, during, or after the founding of the subject rule. Pistols are indisputably in common use for self-defense today, and there is nothing in the historical record to indicate that attaching a brace (for safety and accuracy) would somehow allow the government to impose strict ownership regulations, such as those under the National Firearms Act.

ATF seeks to avoid this significant constitutional conundrum by labeling these pistols as "short-barreled rifles." This position also offends other constitutional doctrines, such as the separation of powers and nondelegation doctrine. *See W. Virginia v. EPA*, 142 S.Ct. 2587, 2609 (June 30, 2022). Finally, even if ATF were to avoid these serious constitutional issues, the Administrative Procedures Act forbids such an arbitrary and vague rule, which overturns over 10 years of established ATF precedent. At bottom, it is Congress's power to make law; not ATF's. *See generally Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023).

## FACTUAL AND LEGAL BACKGROUND

### I.    The Regulation of "Rifles" under Federal Law

The National Firearms Act of 1933 (NFA) regulates rifles with barrels less than 16 inches. 26 U.S.C. § 5845(a)(3). These rifles—called "short-barreled rifles" by ATF[1]—must be identified on a "central registry," along with the "identification and address of [the] person entitled to possess[ ]" the rifle. 26 U.S.C. § 5841. Owners must also pay a transfer tax of $200. 26 U.S.C. §

---

[1] *See* ATF, Firearms Guide, Identification of Firearms, Section 5, available here. App. 3.

2

5811. Any person violating these requirements shall be fined not more than $10,000 or imprisoned not more than ten years, or both. 26 U.S.C. § 5871.

Key to whether a particular weapon is a short-barreled rifle, and therefore must be registered under the NFA, is whether the firearm meets the statutory definition of "rifle." Both the NFA and the Gun Control Act of 1968 (GCA) define a rifle as a "weapon designed or redesigned, made or remade, and intended to be fired from the shoulder." 26 U.S.C. § 5845(c); 18 U.S.C. § 921(a)(7). So, a weapon *not* designed, made, and intended to be "fired from the shoulder" is *not* a "rifle" and therefore cannot be a "short-barreled rifle" which is subject to regulation under the NFA. As explained below, a pistol with a stabilizing brace is not a "rifle" under the statute, and therefore, ATF's attempts to reclassify these pistols as "rifles" is contrary to the NFA and GCA.

## II.     Pistols with Stabilizing Braces

Some larger pistols, due to their weight and recoil, may be difficult to fire with one hand, especially for individuals with limited strength or mobility. *See* 86 Fed. Reg. 30826, 30827 (June 10, 2021). In 2012, an accessory manufacturer invented a "stabilizing brace," which was "inspired by the needs of combat veterans with disabilities who still enjoy recreational shooting but could not reliably control heavy pistols without assistance." 86 Fed. Reg. at 30827. ATF describes stabilizing braces as "a shooter's aid [ ] designed to improve the single-handed shooting performance of buffer tube equipped pistols."[2] ATF also explains that stabilizing braces are

---

[2] *See* ATF, Open Letter on the Redesign of "Stabilizing Braces," (Jan. 16, 2015), available here. App. 4–5.

"intended to improve accuracy by using the operator's forearm to provide stable support for the AR-type pistol."

Stabilizing braces come in various forms, although they all follow a similar pattern. In 2012, ATF considered and approved[3] one version "constructed of a foam-type rubber" and "two Velcro straps." Affixed to the "rearward portion (breech) of a handgun or other pistol['s] frame or receiver,"[4] a shooter "would insert his or her forearm into the device while gripping the pistol's handgrip—then tighten the Velcro straps for additional support and retention."[5] ATF has also recognized other similar designs, labeling them as "cuff-type," "fin-type," or "counterbalance design." 88 Fed. Reg. 6478, 6532 (January 31, 2023). In each case, though, the brace extends from the rear of the weapon and is intended to brace against the forearm when firing.

## III.    ATF's Prior Positions Regarding Stabilizing Braces

ATF has frequently considered stabilizing braces and how they fit into the federal legal framework, repeatedly finding and re-affirming that stabilizing braces do *not* convert a pistol into a regulated short-barreled rifle under the NFA.

In 2012, ATF issued its first classification letter, finding that a "forearm brace, when attached to a firearm, does not convert that weapon to be fired from the shoulder and would not

---

[3] The "approval" was confirmation that installing a stabilizing brace on a pistol does not make the pistol into a firearm that is regulated by the NFA.

[4] *See* Handguns, Stabilizing Braces, and Related Components, *Congressional Research Service* (April 19, 2021), available here. App. 6–8.

[5] ATF, Letter from John Spencer, Chief of Firearms Technology Branch (Nov. 26, 2012), available here. App. 9–10.

alter the classification of a pistol or other firearm."[6] In sum, ATF found "that the device is not designed or intended to fire a weapon from the shoulder," and therefore not a "rifle."

In 2015, ATF issued an "open letter" confirming that initial decision: "attaching the brace to a firearm does not alter the classification of the firearm or subject the firearm to National Firearms Act (NFA) control."[7] "ATF hereby confirms that if used as designed—to assist shooters in stabilizing a handgun while shooting with a single hand—the device is not considered a shoulder stock and therefore may be attached to a handgun without making a NFA firearm." ATF further explained that if "the device is redesigned for use as a shoulder stock," then the firearm would be classified as a short-barrel rifle requiring NFA classification. "Any person who intends to use a handgun stabilizing brace as a shoulder stock on a … must first file an ATF Form 1 and pay the applicable tax because the resulting firearm will be subject to all provisions of the NFA."

In 2017, ATF again confirmed its determination on stabilizing braces noting: "With respect to stabilizing braces, ATF has concluded that attaching the brace to a handgun as a forearm brace does not 'make' a short-barreled rifle because . . . it is not intended to be and cannot comfortably be fired from the shoulder."[8] The 2017 letter went on to partly reverse the 2015 letter's position on firing such a rifle from the shoulder, stating: "incidental, sporadic, or situational 'use' of an arm-brace (in its original approved configuration) equipped firearm from a firing position at or near the shoulder" does not constitute a "redesign" allowing regulation under the NFA.

---

[6] *Id.*

[7] ATF, Open Letter on the Redesign of "Stabilizing Braces," from Max Kingery, Acting Chief, Firearms Technology Criminal Branch, Firearms and Ammunition Technology Division, ATF (Jan. 16, 2015), available here. App. 11–12.

[8] Letter for Mark Barnes, Outside Counsel to SB Tactical, LLC from Marvin G. Richardson, Assistant Director, Enforcement Programs and Services, ATF, 90000:GM, 5000 (Mar. 21, 2017), available here. App. 13–15.

IV.     **The New Rule**

On January 31, 2023, ATF published "Factoring Criteria for Firearms With Attached 'Stabilizing Braces'" rule ("the Rule"), which purports to reverse the agency's decade-long clearly stated and repeatedly affirmed legal position on stabilizing braces. 88 Fed. Reg. 6478 (Jan. 31, 2023).

The Rule amends 27 CFR parts 478 and 479 to re-imagine the definition of a "rifle." Under the Rule, the definition of a "rifle" is expanded to include any weapon that "is equipped with an accessory, component, or other rearward attachment (e.g. a 'stabilizing brace') that provides surface area that allows the weapon to be fired from the shoulder, provided other factors, as described in paragraph (2) indicate that the weapon is designed, made, and intended to be fired from the shoulder." 88 Fed. Reg. at 6574–6575 (Jan. 31, 2023) (amending 27 CFR part 478.11 and 479.11).

The presence of "surface area" and the "other factors" set forth in the new rule cover far more weapons than weapons designed, made, and intended to be fired from the shoulder. According to the new rule, the "other factors" to consider are: (i) the weapon's weight and length, and whether those measurements are "consistent with the weight or length of similarly designed rifles;" (ii) the weapon's "length of pull" and whether that measurement "is consistent with similarly designed rifles;" (iii) the sights on the weapon, and whether those accessories "require the weapon to be fired from the shoulder in order to be used as designed;" (iv) whether the "surface area" in question is created by something "necessary for the cycle of operations;" (v) the manufacturer's direct and indirect marketing and promotional materials indicating intended use of the weapon; and (vi) a catch-all provision that requires ATF to determine if there is any "information demonstrating the likely use of the weapon in the general community." 88 Fed. Reg. at 6574-6575 (Jan. 31, 2023) (amending 27 CFR part 478.11 and 479.11).

6

ATF simultaneously issued several "FAQ" documents that purport to label a wide range of commercially available firearms and common weapon platforms as "short-barreled rifles" under the Rule, which would be regulated by the NFA, even though those firearms are pistols and are not designed and intended to be fired from the shoulder.[9] The result of the rule is that anyone in possession of a pistol re-classified by ATF as a "short-barreled rifle" is immediately in violation of the NFA and faces a $10,000 penalty or up to 10 years in prison. 26 U.S.C. § 5871. ATF exercised its "enforcement discretion" and gave affected parties up to 120 days from the date of publication of the rule to comply with the requirements of the NFA. 88 Fed. Reg. at 6480. This period ended on May 31, 2023, and the rule is now in effect (except for the limited number of plaintiffs in other actions described above).

The Rule's supporting documentation lists several "options" for stabilizing-brace owners: (1) remove the barrel and attach a 16-inch or longer barrel, which ATF says will remove the firearm "from the scope of the NFA"; (2) register the firearm as an NFA firearm by submitting the ATF Form 1, thereby being listed in the National Firearms Registration and Transfer Record database (the statutes require the payment of a $200 tax as well, but ATF has said they will forgo collecting those taxes as part of their "discretion"); (3) permanently remove and dispose of or "alter" the stabilizing brace so that it may not be re-installed; (4) surrender the firearm to a local ATF office; or (5) destroy the firearm. 88 Fed. Reg. at 6570.

## V.    Plaintiffs

As shown by the Verified Complaint, both Plaintiffs are membership organizations with members in Texas and throughout the United States. ECF No. 1:¶¶ 4, 5. Because of the Rule,

---

[9] ATF, "Commercially Available Firearms Equipped With A Stabilizing Brace That Are Short-Barreled Rifles," available here. App. 16–53.

Plaintiffs' members cannot lawfully possess or obtain a pistol with a stabilizing brace without first registering the pistol as a "short-barreled rifle." *Id.* Furthermore, in response to the Rule, some of Plaintiffs' members have disassembled their pistols with stabilizing braces, rendering them inoperable. *Id.* Plaintiffs' members merely seek the ability to possess firearms and exercise their Constitutional rights without being subject to an unlawful rule. *Id.*

## ARGUMENT AND AUTHORITIES

A preliminary injunction should issue if the movant establishes (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in their favor; and (4) that the issuance of the preliminary injunction will not disserve the public interest. *Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). The last two factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "The decision to grant or deny a preliminary injunction is discretionary with the district court." *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985).

## I.      Plaintiffs are likely to succeed on the merits.

### A.      The Rule violates the Second Amendment.

The Second Amendment "protect[s] an individual right to keep and bear arms for self-defense." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111, 2117 (June 23, 2022). Although the federal government may regulate firearms, its ability to do so must be closely scrutinized under the Second Amendment. "To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a

court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id*. at 2126.

Here, ATF did not consider the "Nation's historical tradition of firearm regulation." *Id*. In fact, ATF only briefly commented that short-barreled rifles "were not historically protected by the Second Amendment and thus fall outside the scope of the Second Amendment." 88 Fed. Reg. at 6548, fn. 145. ATF cites a pre-*Bruen* Tenth Circuit case (and other similar cases), holding that short-barreled rifles were "dangerous and unusual" under *Heller*.  *See United States v. Cox*, 906 F.3d 1170, 1185 (10th Cir. 2018) (discussing *D.C. v. Heller*, 554 U.S. 570 (2008)).  In that case, the Tenth Circuit also placed the burden on the plaintiff, finding that he had not made a "meaningful distinction" between short-barreled shotguns and short-barreled rifles. *Id*. at 1186.

There are several problems with *Cox*. First, that case was decided before *Bruen*, and did not apply nor consider the "historical tradition of firearm regulation" test announced by the Supreme Court just last term. Second, *Cox* considered short-barreled rifles, which are not the subject of the Rule. The Rule considers pistols with stabilizing braces, which ATF wrongfully defines as "short-barreled rifles." Third, *Cox* places the burden on *the plaintiff*, which is wrong. The Second Amendment is a "fundamental right," *McDonald v. City of Chicago, Ill*., 561 U.S. 742, 778 (2010), and like other cases asserting a violation of a fundamental right, here "*the government* must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen,* 142 S.Ct. at 2126 (emphasis added); *see also id. at* 2127 ("*the government must affirmatively prove* that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.") (emphasis added); *see also id.* at 2130 (repeatedly emphasizing the government's burden in Second Amendment cases). Fourth, and finally, *Cox* contended that short-barreled rifles were "dangerous and unusual" under

*D.C. v. Heller*, 554 U.S. 570, 627 (2008). That is true only as far is it goes,[10] but pistols with stabilizing braces are *not* "unusual," they are ubiquitous. Indeed, ATF believes there are around 3 million stabilizing braces. 88 Fed. Reg. at 6560. The Congressional Research Service estimates there are up to 40 million stabilizing braces. *Id*. In contrast, according to ATF, there are only 460,544 NFA regulated short-barreled rifles in America—less than 2% of the number of pistols with stabilizing braces, using Congress' estimates.[11] And stabilizing braces certainly are not "dangerous," as the entire purpose of the brace is to make the gun more accurate and therefore safer. *See* ECF No. 1, ¶¶ 4–6.

Other cases cited by ATF suffer from similar flaws. Merely because prior courts have allowed regulation of short-barreled shotguns and rifles, does not support ATF's position here, which is that *pistols with stabilizing braces* maybe subject to the comprehensive NFA registration and tax requirements. The Rule infringes on the Plaintiffs' fundamental rights under the Second Amendment. ATF has simply not met its heavy burden to justify such an infringement, and the rule must be set aside.

### B.   The Rule is invalid because it is lawmaking, and therefore violates the Separation of Powers and the nondelegation doctrine.

Beyond just the Second Amendment, the rule also violates the separation of powers and the nondelegation doctrine. Article I of the Constitution vests "[a]ll" federal "legislative powers ...

---

[10] The *Bruen* Court substantially backed away from the "dangerous and unusual weapons" phrase in *Heller*, noting "we cautioned that we were not 'undertak[ing] an exhaustive historical analysis today of the full scope of the Second Amendment' and moved on to considering the constitutionality of the District of Columbia's handgun ban." *Bruen*, 142 S.Ct. at 2128 (quoting *Heller* at 627). Plaintiffs contend that the test is *not* "dangerous and unusual," and is instead the clear test articulated in *Bruen*. To the extent this Court believes that "dangerous and unusual" is somehow part of the Second Amendment standard to be applied, Plaintiffs argue that *Heller* was wrongly decided on that singular issue.

[11] *See* ATF, Firearms Commerce in the United States (2020), available here. App. 54–75.

in Congress." Art. I, § 1. According to Justice Marshall, this provision mandates that "important subjects ... must be entirely regulated by the legislature itself," even if Congress may leave the Executive "to act under such general provisions to fill up the details." *Wayman v. Southard*, 10 Wheat. 1, 42–43 (1825). Yet it is "unreasonable to assume" that Congress gave an agency "unprecedented power[s]" in the "absence of a clear [legislative] mandate." *Industrial Union Dept., AFL–CIO v. American Petro. Inst.*, 448 U.S. 607, 645 (plurality).

The "major questions doctrine" (or "clear statement rule") provides a check on "agencies asserting highly consequential power beyond what Congress could reasonably be understood to have granted." *W. Virginia,* 142 S.Ct. at 2609. In *West Virginia v. EPA*, the Supreme Court explained that Congress must "speak clearly if it wishes to assign to an agency decisions of vast economic and political significance." 142 S. Ct. at 2605 (citation omitted). In such cases, "modest words, vague terms, or subtle devices" cannot confer upon the Executive Branch the power to make "a radical or fundamental change" to a statutory scheme. *Id*. at 2609 (citations omitted). The Court presumes that "Congress intends to make major policy decisions itself, not leave those decisions to agencies." *Id*. (citation omitted). In short, in "certain extraordinary cases," executive officials "must point to clear congressional authorization for the power [they] claim[ ]." *Id*. at 2634.

Here, Congress regulated rifles, and defined those firearms *only* as those firearms "designed or redesigned, made or remade, **and** intended to be fired from the shoulder." 26 U.S.C. § 5845(c) (emphasis added). In other words, a rifle is only a firearm that is (1) designed or redesigned to be fired from the shoulder, (2) made or remade to be fired from the shoulder, and (3) intended to be fired from the shoulder. Now, nearly a century after federal law first began regulating certain rifles, ATF turns this clear statutory language on its head and explicitly ignores

manufacturers' "intent with respect to the use or design of an accessory." 88 Fed. Reg. at 6479. Instead, ATF regulates stabilizing braces because it "began to see" how some people used the braces "to fire weapons from the shoulder." *Id*. In so doing, ATF is purporting to expand the scope of that nearly century-old federal law to cover up to 100 times as many weapons at a cost that they estimate to be $266.9 million per year.[12]

Now, ATF purports to use the clear language in 26 U.S.C. § 5845(c) to justify a new regulation reclassifying up to 40 million firearms. "This is no everyday exercise of federal power." *NFIB v. OSHA*, 142 S.Ct. 661, 665 (Jan. 13, 2022). In *NFIB,* the Biden Administration attempted to re-imagine the phrase "occupational safety" to impose a nationwide vaccine mandate impacting 84 million American workers. *Id*. The Court rejected such expansive view of such a phrase, which clearly only applied to "*workplace* safety standards, not broad public health measures." *Id*.

In the same way, "designed," "made" and "intended" to be "fired from the shoulder" means just what it says. Rifles are fired from the shoulder. Pistols are not. The fact that some people might be able to use a stabilizing brace—which no one disputes was made, designed, and intended to help shooters fire heavy pistols by stabilizing the firearm against the forearm—as a shoulder stock, does not convert the language in the NFA into something it is not. This Court should decline ATF's invitation to interpret this language so broadly as to draw *any firearm* that *could possibly be fired from the shoulder* as an NFA "firearm." ATF never took this position before and it is a "telling indication" that its new interpretation extends beyond "the agency's legitimate reach." *Id.* at 666.

---

[12] Again, ATF believes the number of stabilizing braces to be around 3 million, so this cost estimate would be significantly higher using estimates from other sources, such as the Congressional Research Service.

Indeed, if Congress wants to revisit a nearly century-old definition, it should do so, but that is not the role of an administrative agency.

Moreover, if Congress actually permitted ATF to re-define the word "rifle" in such a dramatic way—contrary to the recent precedents in *NFIB* and *West Virginia*— then something is horribly wrong, because the entire statutory scheme at issue would run completely afoul of the nondelegation doctrine. It is for Congress to make laws, not to indiscriminately delegate powers to ATF allowing them to re-define "rifle" to anything that could be pressed against a shoulder. If Congress could hand off all its legislative powers to unelected agency officials, it "would dash the whole scheme" of our Constitution and enable intrusions into the private lives and freedoms of Americans by bare edict rather than only with the consent of their elected representatives. *DOT v. AAR*, 575 U.S. 43, 61 (2015) (Alito, J., concurring).

At bottom, the rule is unlawful and should be set aside because it runs afoul of these constitutional principles. If this Court finds that Congress granted ATF the power to re-write the word "rifle," then Plaintiffs urge the Court to strike down the NFA on the bases of the nondelegation doctrine.

### C.     The Rule conflicts with the federal definition of "rifle."

The Rule is also unlawful because it amends the definition of a "rifle" in a way that conflicts with the statute's plain language. "An administrative agency's authority is necessarily derived from the statute it administers and may not be exercised in a manner that is inconsistent with the administrative structure that Congress has enacted." *United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 489 (5th Cir. 2014). "[N]either regulations nor guidance documents" can provide something which is not authorized by statute. *Jackson v. U.S. Dep't of Hous. & Urb. Dev.*, 38 F.4th 463, 468 (5th Cir. 2022); *Schism v. U.S.*, 316 F.3d 1259, 1284-85

(Fed. Cir. 2002) ("[A]n agency cannot do by regulation what the applicable statute itself does not authorize.").

### 1.    The statutory definition of "rifle" is plain and unambiguous.

"Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (quoting *U.S. v. Ron Pair Enterprises, Inc*., 489 U.S. 235, 240 (1989)).

In this case, ATF purports to interpret "rifle" under the GCA and the NFA. Under these statutes, Congress has clearly and unambiguously defined a "rifle" as "a weapon designed, redesigned, made or remade, and intended to be fired from the shoulder . . ." *See* 18 U.S.C. § 921(a)(7) and 26 U.S.C. § 5845(c). That is, a "rifle" must be (1) designed or redesigned to be fired from the shoulder; (2) made or remade to be fired from the shoulder; and (3) intended to be fired from the shoulder—all three requirements are necessary.

The Rule establishes a "two-step" review process for determining whether a firearm is a "rifle." The first step is to determine whether there is some "surface area" at the rear of the firearm which "allows the weapon" to be fired from the shoulder. If that first step is met, then the second step is to determine whether certain "other factors" in the rule "indicate that the weapon is designed, made and intended" to be fired from the shoulder.

Except that is not what Congress said in the statute. Congress defined "rifle" as "a weapon designed, redesigned, made or remade, and intended to be fired from the shoulder . . ." *See* 18 U.S.C. § 921(a)(7) and 26 U.S.C. § 5845(c). Courts engage in statutory construction with a

"presumption that each word Congress uses is there for a reason." *Advoc. Health Care Network v. Stapleton*, 581 U.S. 468, 477 (2017).

The Rule essentially modifies the statutory definition of "rifle" to expand it beyond firearms which meet all three criteria and to cover any firearm which ATF believes *may* or *could* be fired from the shoulder. As explained *supra*, in so doing, ATF expands the scope of this federal law to cover up to one hundred times as many weapons overnight.

That is, the Rule allows ATF to *imply* that someone had designed, made, and intended for a rifle to be fired from the shoulder, even where an individual explicitly does the opposite. That cannot be. A pistol with a stabilizing brace, as ATF has previously acknowledged, was not designed nor intended to be "fired from the shoulder." It plainly cannot meet the statutory definition of a "rifle." Since the Rule concludes the opposite, the Rule conflicts with the law and must be set aside.

### 2. The Rule should get no deference.

When considering whether an agency's rule conflicts with a statute, courts ask first "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). Courts answer that question "exhaust[ing] all the traditional tools of construction" including "text, structure, history, and purpose." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (citations omitted). Courts "will not defer to an agency interpretation that is inconsistent with the design and structure of the statute as a whole." *Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.*, 968 F.3d 454, 460 (5th Cir. 2020), as revised (Aug. 4, 2020). "If that holistic reading of the statute settles the matter, Chevron ends: we must give effect to the unambiguously expressed intent of Congress." *Id.*

As explained above, the plain and unambiguous definition of "rifle" is obvious, therefore, deference is not permissible. But perhaps more importantly, Courts do not defer to regulations interpreting a statute which imposes criminal penalties, such as here. *Cargill*, 57 F.4th at 466-67; *see* 26 U.S.C. § 5871 (imposing a criminal penalty for violating the NFA). Congress clearly established the definition of a "rifle" in both the NFA and the GCA, and ATF simply pretends there is ambiguity to grab additional regulatory authority. Their Rule should be accorded no deference, because the ATF's regulation conflicts with the statute it purports to interpret.

3. **Even if there were ambiguity with the statute, ATF cannot interpret that ambiguity to increase criminal liability.**

Even if there *were* ambiguity in the clear definitions of "rifle," and ATF could re-imagine the definition to include pistols with stabilizing braces, the rule of lenity would prohibit such an interpretation.

When there is ambiguity in a statute, an agency cannot resolve that ambiguity in a way that increases criminal liability. Instead, any such ambiguity must be remedied by Congress. *See, e.g., Cargill*, 57 F.4th at 451. That is, the underlying statute must be interpreted against imposing criminal liability, not in favor of it. *See id.* at 469*; see also U.S. v. Thompson/Center Arms Co*., 504 U.S. 505, 517-18 (1992). This is especially true where, as here, an agency is attempting to criminalize activity that it has previously (and repeatedly) explicitly allowed*. See Cargill,* 57 F.4th 447, 451 (explaining that it is for Congress, not an agency, to set forth the scope of criminal prohibitions, and finding it especially egregious where an agency was purporting to criminally ban activity it had previously allowed).

The Rule purports to expand the statute to cover that which Congress did not intend. For these reasons, the Rule is unlawful and must be set aside.

### D.     The Rule is arbitrary and capricious.

Even assuming ATF properly interpreted "rifle" to mean "pistols with stabilizing braces," Plaintiffs still are likely to succeed on the merits because the Rule is arbitrary and capricious. To survive an arbitrary and capricious challenge, ATF must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983) (quotation omitted). When an agency reverses itself on something it must "provide [a] reasoned explanation for its action." *F.C.C. v. Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009). "To be sure, the requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it is changing position." *Id*.

Here, ATF attempts throughout the rulemaking documents to argue that the Rule is not a change in position, but rather providing clarity due to a series of inconsistent statements. *See, e.g.,* 88 Fed. Reg. at 6509 ("Due to inconsistent advice regarding how the use of a ''stabilizing brace'' device affected a classification and the resulting public confusion on the proper application of the NFA and GCA to firearms with ''stabilizing braces,'' as described in the NPRM and this final rule, the Department seeks to inform the industry and public on the best interpretation regarding when ''a firearm is designed . . . , made . . . , and intended to be fired from the shoulder'' within the meaning of the relevant statutory terms."). Yet, as discussed herein, ATF has repeatedly affirmed in no uncertain terms the mere installation of a stabilizing brace does not convert a weapon into an NFA firearm. In 2015, in an action that could not have been clearer as to what ATF's position was, they released an "open letter" which affirmed that statement. ATF's rulemaking documents fail to acknowledge this clarity, and thus fail to adequately account for the significant departure from past practice the Rule represents.

17

Since ATF has failed to acknowledge the significance of this reversal, they necessarily have failed to provide a reasoned explanation for it. The Rule is arbitrary and capricious and must be set aside.

### E.      The Rule is void for vagueness.

Finally, the rule is also unlawful because it is unlawfully vague. "The void for vagueness doctrine addresses at least two connected but discrete due process concerns: Regulated parties should know what is required of them so they may act accordingly; and precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *F.C.C. v. Fox Television Stations, Inc.,* 567 U.S. 239 (2012).

The Rule is vague because it uses vague terms, and then purports to subjectively apply those terms in ways that are unknown (and cannot become known) to everyday Americans. For example, the rule's two-part analysis begins with considering whether there is any "surface area" that "allows the weapon to be fired from the shoulder." But the term "surface area" is not defined, and pistols with stabilizing braces are meant to be attached to the forearm. If ATF determines sufficient "surface area" exists, however, it goes on to stop two where it looks at subjective information, much of which comes from third parties which may not even be known to the individual in possession of the firearm: things like marketing material (including "indirect" marketing material, which is also an undefined term), and a catch-all called "information demonstrating the likely use of the weapon in the general community." 88 Fed. Reg. at 6574-6575. There is no way to know at which point a firearm "crosses the line" and is regulated by the NFA— indeed Americans must guess, and if they guess wrong, they could face significant criminal penalties. But that's not what due process requires.

The rule does not give an average person any way to know what ATF means by these terms or how they will be interpreted to determine at what point that person is subject to NFA regulations, and thus potential criminal penalties. Thus, the rule is vague and must be set aside.

## II.      Plaintiffs will suffer irreparable harm if an injunction is not granted.

"To satisfy the second element of the preliminary injunction standard, the [movant] must demonstrate that if the district court denied the grant of a preliminary injunction, irreparable harm would result." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). "Even 'alleged' deprivations of constitutional or procedural rights may justify injunctive relief." *VanDerStok v. Garland*, No. 4:22-CV-00691-O, 2022 WL 4809376, at *5 (N.D. Tex. Oct. 1, 2022); *see, e.g., Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 294–97 (5th Cir. 2012) (finding irreparable harm where plaintiffs "alleged" violations of constitutional rights on grounds that "[t]he loss of [constitutional] freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury") (citation omitted); *see also Louisiana v. Horseracing Integrity & Safety Auth. Inc.*, No. 6:22-cv-01934, 2022 WL 2960031, at *13 (W.D. La. July 26, 2022) (finding irreparable harm where plaintiffs alleged action in excess of statutory authority and APA violations).

Here, Plaintiffs are membership organizations and assert their members' Second Amendment rights in this lawsuit. *See Texas*, No. 6:23-cv-13, ECF No. 51, n.3 (S.D. Tex. May 31, 2023) (finding associational group Gun Owners of America, Inc. satisfied standing requirements). As alleged in the Verified Complaint, Plaintiffs' members can no longer lawfully possess or obtain a pistol with a stabilizing brace without first registering that pistol as a "short-barreled rifle" pursuant to ATF's rule. Those members' interests include their desire to exercise their constitutionally protected right to keep and bear arms without being subjected to criminal prosecution, to be governed by regulations that are not unconstitutional or otherwise illegal, and

to lawfully possess and/or transfer property that they lawfully obtained. *But for* ATF's unlawful rule, and their reasonable fear of prosecution for violating the rule's provisions, Plaintiffs' members would seek to acquire, keep, possess and/or transfer lawful arms for self-defense, and other lawful purposes. ECF No. 1:¶¶ 4, 5.

### III. The public interest and balance of harms favors an injunction.

The third and fourth requirements for an issuance of a preliminary injunction—the balance of harms and whether the requested injunction will serve the public interest—"merge when the Government is the opposing party." *Nken,* 556 U.S. at 435.

Balancing the harms plainly favors the Plaintiffs here. Plaintiffs face harm because their members must comply with a Rule that is unlawful, which impedes their ability to lawfully own and possess constitutionally protected firearms. The penalties for noncompliance are not insignificant, as they include both five-figure fines and potential prison time. Defendant, which is already enjoined from enforcing the Rule against other plaintiffs, faces no harm. To paraphrase this Court, an agency has "no right" to promulgate a regulation "that violates the law." *Schelske v. Austin*, No. 6:22-CV-049-H, 2022 WL 17835506, at *28 (N.D. Tex. Dec. 21, 2022).

And "the 'public interest [is] in having governmental agencies abide by the federal laws that govern their existence and operations.'" *State v. Biden*, 10 F.4th 538, 559 (5th Cir. 2021) (citation omitted). That interest is plainly served here by the issuance of the injunction, for the reasons already explained.

The threatened harm to the Plaintiffs far outweighs the nonexistent harm to the Defendant, and the public interest is served by the injunction. These factors of the test are met.

20

**CONCLUSION**

Plaintiffs respectfully request that the Court grant their motion and enter an injunction prohibiting Defendant from enforcing the Rule.

Dated this 15th day of June, 2023.

Respectfully Submitted,

THE LAW OFFICE OF JASON NASH, P.L.L.C.

s/ *Jason C. Nash*

Jason C. Nash (Texas Bar No. 24032894)
601 Jameson Street
Weatherford, TX 76086
Telephone: (817) 757-7062
Jnash@jasonnashlaw.com

WISCONSIN INSTITUTE FOR
LAW & LIBERTY, INC.

Richard M. Esenberg (*pro hac vice pending*)
Daniel P. Lennington (*pro hac vice pending*)
Lucas T. Vebber (*pro hac vice pending*)
330 East Kilbourn Avenue, Suite 725
Milwaukee, WI 53202
Telephone: (414) 727-9455
Facsimile: (414) 727-6385
Rick@will-law.org
Dan@will-law.org
Lucas@will-law.org

ARRINGTON LAW FIRM

Barry K. Arrington (*pro hac vice forthcoming*)
(Texas Bar No. 24129555)
4195 Wadsworth Boulevard
Wheat Ridge, CO 80033
Telephone: (303) 205-7870
Barry@arringtonpc.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2023, I electronically filed the foregoing using the CM/ECF system. Thus far, no appearances have been filed in this case, however, service was accepted electronically by AUSA Brian Stoltz on behalf of the U.S. Attorney's office. Accordingly, AUSA Stoltz will be served this brief via email, Attorneys Pitz, Lowenstein, and Drezner will be sent courtesy copies via email, and copies of this brief will be served via mail on the following per Fed. R. Civ. P. 4(i):

Office of the Attorney General
of the United States
950 Pennsylvania Ave, N.W.
Washington, DC 20530-0001

Bureau of Alcohol, Tobacco,
Firearms and Explosives
99 New York Avenue, NE
Washington, DC 20226

Dated this 15th day of June, 2023.

s/ *Jason C. Nash*
Jason C. Nash

22