IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

---

TEXAS GUN RIGHTS, INC.,
and NATIONAL ASSOCIATION
FOR GUN RIGHTS INC.,

      Plaintiffs,

      v.                                    Civil Action No. 4:23-cv-00578-O

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES,

      Defendant.

---

## APPENDIX TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

---

Under Local Rule 7.1(i), Plaintiffs file this Appendix in Support of their Motion for

Preliminary Injunction, which contains the following documents:

## INDEX OF APPENDIX

| Description of Document | Page(s) |
|---|---|
| ATF, Firearms Guide, Identification of Firearms, Section 5 | App. 4 |
| ATF, Open Letter on the Redesign of "Stabilizing Braces," (Jan. 16, 2015) | App. 5–6 |
| Handguns, Stabilizing Braces, and Related Components, *Congressional Research Service* (April 19, 2021) | App. 7–9 |
| ATF, Letter from John Spencer, Chief of Firearms Technology Branch (Nov. 26, 2012) | App. 10–11 |
| ATF, Open Letter on the Redesign of "Stabilizing Braces," from Max Kingery, Acting Chief, Firearms Technology Criminal Branch, Firearms and Ammunition Technology Division, ATF (Jan. 16, 2015) | App. 12–13 |

Letter for Mark Barnes, Outside Counsel to SB Tactical, LLC
from Marvin G. Richardson, Assistant Director, Enforcement Programs
and Services, ATF, 90000:GM, 5000 (Mar. 21, 2017)...........................................App. 14–16

ATF, "Commercially Available Firearms Equipped With A
Stabilizing Brace That Are Short-Barreled Rifles" ...............................................App. 17–54

ATF, Firearms Commerce in the United States (2020) ........................................App. 55–76

Dated this 15th day of June, 2023.

Respectfully Submitted,

THE LAW OFFICE OF JASON NASH, P.L.L.C.

s/ *Jason C. Nash*

Jason C. Nash (Texas Bar No. 24032894)
601 Jameson Street
Weatherford, TX 76086
Telephone: (817) 757-7062
Jnash@jasonnashlaw.com

WISCONSIN INSTITUTE FOR
LAW & LIBERTY, INC.

Richard M. Esenberg (*pro hac vice pending*)
Daniel P. Lennington (*pro hac vice pending*)
Lucas T. Vebber (*pro hac vice pending*)
330 East Kilbourn Avenue, Suite 725
Milwaukee, WI 53202
Telephone: (414) 727-9455
Facsimile: (414) 727-6385
Rick@will-law.org
Dan@will-law.org
Lucas@will-law.org

ARRINGTON LAW FIRM

Barry K. Arrington (*pro hac vice forthcoming*)
(Texas Bar No. 24129555)
4195 Wadsworth Boulevard
Wheat Ridge, CO 80033
Telephone: (303) 205-7870
Barry@arringtonpc.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2023, I electronically filed this appendix using the CM/ECF system. Thus far, no appearances have been filed in this case, however, service was accepted electronically by AUSA Brian Stoltz on behalf of the U.S. Attorney's office. Accordingly, AUSA Stoltz will be served this appendix via email, Attorneys Pitz, Lowenstein, and Drezner will be sent courtesy copies via email, and copies of this appendix will be served via mail on the following per Fed. R. Civ. P. 4(i):

Office of the Attorney General                    Bureau of Alcohol, Tobacco,
of the United States                              Firearms and Explosives
950 Pennsylvania Ave, N.W.                        99 New York Avenue, NE
Washington, DC 20530-0001                         Washington, DC 20226


Dated this 15th day of June, 2023.

                                        s/ *Jason C. Nash*
                                        Jason C. Nash

App. 3

# Firearms Guide - Identification of Firearms - Section 5

Previous Page | Back to Table of Contents | Next Page

## 12ga. Crude Manufacture

**Classification**

Weapon Made from a Shotgun



**Distinctive Characteristics**

Barrel less than 18 inches and/or overall length less than 26 inches, stock altered, barrel cut down. Often mistakenly called a "sawed off shotgun." In this instance overall length is determining factor. However, if the overall length is 26 inches or more and barrel less than 18 inches, this weapon would still be classified as a firearm under the Act.

**Rate of Transfer Tax**

$200.00

## Short Barreled Rifle

**Classification**

Short Barreled Rifle



**Distinctive Characteristics**

Rifle having a barrel or barrels of less than 16 inches in length.

**Rate of Transfer Tax**

$200.00

## Weapon Made from a Rifle

**Classification**

Weapon Made from a Rifle



**Distinctive Characteristics**

Overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length.

**Rate of Transfer Tax**

$200.00

*Last Reviewed September 22, 2016*

**App. 4**

## OPEN LETTER ON THE REDESIGN OF "STABILIZING BRACES"

The Firearms and Ammunition Technology Division (FATD), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has received inquiries from the public concerning the proper use of devices recently marketed as "stabilizing braces." These devices are described as "a shooter's aid that is designed to improve the single-handed shooting performance of buffer tube equipped pistols." The device claims to enhance accuracy and reduce felt recoil when using an AR-style pistol.

These items are intended to improve accuracy by using the operator's forearm to provide stable support for the AR-type pistol. ATF has previously determined that attaching the brace to a firearm does not alter the classification of the firearm or subject the firearm to National Firearms Act (NFA) control. However, this classification is based upon the use of the device as designed. When the device is redesigned for use as a shoulder stock on a handgun with a rifled barrel under 16 inches in length, the firearm is properly classified as a firearm under the NFA.

The NFA, 26 USCS § 5845, defines "firearm," in relevant part, as "a shotgun having a barrel or barrels of less than 18 inches in length" and "a rifle having a barrel or barrels of less than 16 inches in length." That section defines both "rifle" and "shotgun" as "a weapon designed or *redesigned*, made or remade, *and intended to be fired from the shoulder*…." (Emphasis added).

Pursuant to the plain language of the statute, ATF and its predecessor agency have long held that a pistol with a barrel less than 16 inches in length and an attached shoulder stock is a NFA "firearm." For example, in Revenue Ruling 61-45, Luger and Mauser pistols "having a barrel of less than 16 inches in length with an attachable shoulder stock affixed" were each classified as a "short barrel rifle…within the purview of the National Firearms Act."

In classifying the originally submitted design, ATF considered the objective design of the item as well as the stated purpose of the item. In submitting this device for classification, the designer noted that

> The intent of the buffer tube forearm brace is to facilitate one handed firing of the
> AR15 pistol for those with limited strength or mobility due to a handicap. It also
> performs the function of sufficiently padding the buffer tube in order to reduce
> bruising to the forearm while firing with one hand. Sliding and securing the brace
> onto ones forearm and latching the Velcro straps, distributes the weight of the
> weapon evenly and assures a snug fit. Therefore, it is no longer necessary to
> dangerously "muscle" this large pistol during the one handed aiming process, and
> recoil is dispersed significantly, resulting in more accurate shooting without
> compromising safety or comfort.

In the classification letter of November 26, 2012, ATF noted that a "shooter would insert his or her forearm into the device while gripping the pistol's handgrip-then tighten the Velcro straps for additional support and retention. Thus configured, the device provides the shooter with additional support of a firearm while it is still held and operated with one hand." When strapped to the wrist and used as designed, it is clear the device does not allow the firearm to be fired from the shoulder. Therefore, ATF concluded that, pursuant to the information provided, "the device

is not designed or intended to fire a weapon from the shoulder." In making the classification ATF determined that the objective design characteristics of the stabilizing brace supported the stated intent.

ATF hereby confirms that if used as designed—to assist shooters in stabilizing a handgun while shooting with a single hand—the device is not considered a shoulder stock and therefore may be attached to a handgun without making a NFA firearm. However, ATF has received numerous inquiries regarding alternate uses for this device, including use as a shoulder stock. Because the NFA defines both rifle and shotgun to include any "weapon designed or *redesigned*, made or *remade*, and *intended to be fired from the shoulder*," any person who *redesigns* a stabilizing brace for use as a shoulder stock makes a NFA firearm when attached to a pistol with a rifled barrel under 16 inches in length or a handgun with a smooth bore under 18 inches in length.

The GCA does not define the term "redesign" and therefore ATF applies the common meaning. "Redesign" is defined as "to alter the appearance or function of." See e.g. Webster's II New College Dictionary, Third Ed. (2005). This is not a novel interpretation. For example ATF has previously advised that an individual possesses a destructive device when possessing anti-personnel ammunition with an otherwise unregulated 37/38mm flare launcher. See ATF Ruling 95-3. Further, ATF has advised that even use of an unregulated flare and flare launcher as a weapon results in the making of a NFA weapon. Similarly, ATF has advised that, although otherwise unregulated, the use of certain nail guns as weapons may result in classification as an "any other weapon."

The pistol stabilizing brace was neither "designed" nor approved to be used as a shoulder stock, and therefore use as a shoulder stock constitutes a "redesign" of the device because a possessor has changed the very function of the item. Any individual letters stating otherwise are contrary to the plain language of the NFA, misapply Federal law, and are hereby revoked.

Any person who intends to use a handgun stabilizing brace as a shoulder stock on a pistol (having a rifled barrel under 16 inches in length or a smooth bore firearm with a barrel under 18 inches in length) must first file an ATF Form 1 and pay the applicable tax because the resulting firearm will be subject to all provisions of the NFA.

If you have any questions about the issues addressed in this letter, you may contact the Firearms and Ammunition Technology Division at fire_tech@atf.gov or by phone at (304) 616-4300.

Max M. Kingery
Acting Chief
Firearms Technology Criminal Branch
Firearms and Ammunition Technology Division

Updated April 19, 2021

# Handguns, Stabilizing Braces, and Related Components

On April 7, 2021, the White House announced that the Department of Justice has been directed to issue a proposed rule within 60 days (by June 6, 2021) to clarify when a device marketed as a stabilizing brace might turn a pistol into a short-barreled rifle. On December 18, 2020, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) published guidance in the *Federal Register* for public comment that indicated that it was preparing to reclassify certain ***heavier, larger handguns (pistols) equipped with stabilizing braces*** as more stringently regulated ***short-barreled rifles***. Such a reclassification would retroactively trigger the more extensive paperwork and background check requirements of the 1934 National Firearms Act (NFA), and require registration of the owner and firearm with ATF. While this guidance was withdrawn on December 23, 2020, the proposed rule could address some of the same issues.

## Stabilizing Brace: Shooter's Assist or Shoulder Stock?

Stabilizing braces are devices that can be attached to the rearward portion (breech) of a handgun or other pistol grip firearm's frame or receiver. The brace extends backwards, generally in alignment with the axis of the barrel(s), so the firearm can be secured to the shooter's forearm, while it is held by its pistol grip or other short stock, making a heavier, larger short-stocked firearm easier to handle. The first prototype stabilizing brace was designed to assist a veteran and service-connected amputee with firing an AR-type handgun singlehandedly. Stabilizing braces and similar devices, however, could serve more generally as a quasi-shoulder stock. The addition of shoulder stock to a short-stocked firearm could possibly change a firearm's classification under current law due to definitional differences between the NFA and Gun Control Act of 1968 (GCA).

ATF has long ruled that the attachment of a shoulder stock to a handgun or pistol grip firearm transformed that GCA-regulated firearm into an NFA-regulated short-barreled rifle or shotgun. In November 2012, however, ATF determined that attaching a stabilizing brace to an AR-type pistol would not change that firearm's classification from a solely GCA-regulated handgun to an NFA-regulated short-barreled rifle. Since then, many variations of stabilizing braces have been manufactured and sold in the United States. In 2015, in an Open Letter, ATF raised questions as to the legality of using or intending to use stabilizing braces as shoulder stocks. In several private letters, made public by the addressees, ATF appeared to walk back these considerations. In 2018, however, ATF charged an individual with unlawfully possessing an unregistered short-barreled rifle—an AR-type pistol equipped with a cheek rest, which is arguably a variant of a stabilizing brace. ATF submitted that this cheek rest, when fully extended, constituted a shoulder stock, because its "length of pull" was greater than 13.5 inches (i.e., the distance from the trigger pad to the end of the cheek rest fully extended). The defendant was found not guilty by a jury, based partly on ATF's failure to take the measurement properly in alignment with the barrel's axis. This case is an example of how the absence of definitive determinations about the legality of firearms equipped with stabilizing braces and similar devices may create repercussions.

## GCA- and NFA-Regulated Firearms

When Congress passed the GCA, it significantly amended and repassed the NFA as Title II of that measure. These acts include different, but respective definitions for the term "firearm" (18 U.S.C. §921(a)(3) and 26 U.S.C. §5845(a)). Under these definitions, all firearms regulated under the NFA are first regulated under the GCA. As discussed below, the three basic types of firearms regulated under the GCA are shotguns, rifles, and handguns.

### SBSs, SBRs, AOWs, and DDs

The NFA further regulates short-barreled shotguns, or SBSs, and short-barreled rifles, or SBRs: (1) shotguns with barrels less than 18 inches in length, (2) rifles with barrels less than 16 inches in length, or (3) any existing shotgun or rifle that has been modified to be less than 26 inches in overall length by shortening its stock and/or barrel(s). (See 18 U.S.C. §§921(a)(6) and (8), and 26 U.S.C. §5845(a).)

Under "any other weapon," or AOW, the NFA regulates smoothbore handguns (less than 26 inches in overall length) and other "concealable" firearms with combination smoothbore and rifled bore barrels between 12 and 18 inches in length. The AOW classification also captures certain deceptive or disguised firearms (e.g., umbrella, belt buckle, and pen guns). The term "any other weapon" is defined at 26 U.S.C. §5845(e).

Under "destructive device," or DD, the NFA regulates "non-sporting" shotguns; firearms with barrel bore diameters greater than one-half inch (e.g., grenade launchers, bazookas, and mortars); as well as grenades, rockets, mortar rounds, mines, and other explosive devices (e.g., Molotov cocktails). Congress included similar definitions for the term "destructive device" in the GCA and NFA (18 U.S.C. §921(a)(4) and 26 U.S.C. §5845(f)). In addition, the NFA regulates machine guns and firearms silencers, which are beyond the scope of this In Focus.

### Shotgun and Rifle Definitions

Congress included identical statutory standalone definitions for the terms "shotgun" and "rifle" under the GCA and NFA. The term "shotgun" means "a weapon designed or

redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of an explosive to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger" (18 U.S.C. §921(a)(5) and 26 U.S.C. §5845(d)). The term "rifle" means "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of an explosive to fire only a single projectile through a rifled bore for each single pull of the trigger" (18 U.S.C. §921(a)(7) and 26 U.S.C. §5845(c)).

From these definitions, it can be deduced that the defining characteristic of a long gun (shotgun or rifle) is that it is intended to be shoulder-fired, from which it follows that the defining feature of a long gun is a *shoulder stock* of some type. In addition, shotguns are "smoothbore." The barrel of a rifle is "rifled bore," and consists of lines and grooves machine-cut into the interior of the barrel (the bore) to spin a bullet as it travels fast at a high velocity down the barrel bore.

### Handgun Definition and Other Pistol Grip Firearms
Under the GCA, the term "handgun" means "(A) a firearm which has a short stock and is designed to be held and fired by the use of a single hand; and (B) any combination of parts from which a firearm described in subparagraph (A) can be assembled" (18 U.S.C. §921(a)(29)). From this definition, it can be deduced that the defining feature of a handgun is its *short stock*, and that it is designed to be fired singlehandedly. The term handgun includes both pistols and revolvers (26 C.F.R. §§478.11 and 479.11). Under current law, *rifled bore handguns* are regulated solely under the GCA and there are no restrictions on the barrel or overall length of such handguns.

*Smoothbore handguns* are regulated under the NFA under the AOW classification. Since at least 1976, however, ATF has adopted 26 inches in overall length as the determining dimension that separates NFA-regulated "concealable" smoothbore handguns, or AOWs, from GCA-regulated short-stocked, smoothbore firearms. ATF adopted this presumptive dimension of concealability from the statutory definitions for short-barreled rifles and shotguns discussed above. ATF refers to these solely GCA-regulated short-stocked, smoothbore firearms, which are greater than 26 inches in overall length, as "pistol grip firearms." The popularity of pistol grip firearms arguably increased in 2008, when ATF determined that the barrel length was "immaterial" to the classification of such firearms, while the 26 inches in overall length restriction remained unchanged. Prior to this, most firearms makers believed that the barrel of a pistol grip firearm had to be greater than 18 inches.

### "Gray Area" in the Law?
In a potentially legal gray area, some GCA-regulated handguns and pistol grip firearms are dimensionally equivalent—in terms of their barrel lengths, overall lengths, and/or barrel bores—to other NFA-regulated firearms. As discussed above, it is unlawful to modify an existing rifle or shotgun by shortening its stock and/or barrel(s) into a short-barreled rifle or shotgun without following the NFA

requirements, which includes remitting a $200 making tax. However, a handgun with equivalent dimensions does not trigger the NFA requirements, as long as a shoulder stock is never affixed to its frame or receiver.

The same is true for pistol grip firearms. However, ATF holds out the possibility of reclassifying pistol grip firearms as AOWs under the NFA if they are ever used in a concealed manner in the commission of a crime. Others counter that pistol grip firearms would be more properly classified as DDs, under ATF's reasoning that these short-stocked, smoothbore firearms are "non-handguns" and "non-shotguns," and are usually firearms with barrel bores of greater than one-half inch in diameter.

## Larger, Heavier Handguns, and Pistol Grip Firearms
In the past 16 years, firearms manufacturers in the United States have successfully marketed certain larger, heavier handguns and other pistol grip firearms that arguably push the limits of current law definitions of firearms types and classes under current law. Some of these handguns are assembled around frames and receivers originally designed for AR- and AK-type rifles, and are sometimes chambered for mid-size rifle cartridges and shotgun shells.

Under the 1994-2004 Semiautomatic Assault Weapons (SAW) ban, some of these handguns could have been prohibited under its 50 ounce weight limit (unloaded) and other characteristics that defined an "assault pistol." The SAW ban did not address pistol grip firearms substantively, as many of these firearms were pump-action, as opposed to semiautomatic, when the ban was enacted. The introduction of stabilizing braces and similar components has significantly increased the popularity of heavier, larger pistols and pistol grip firearms.

In the past eight years, larger, heavier handguns and pistol grip firearms have seen increased sales likely due, in no small part, to stabilizing braces. Most major firearms manufacturers are making firearms equipped with stabilizing braces as part of their featured product lines. While there are no available statistics to gauge authoritatively the number of stabilizing braces already made and sold in the United States, unofficial estimates suggest that there are between 10 and 40 million stabilizing braces and similar components already in civilian hands, either purchased as accessories or already attached to firearms made at home or at the factory. Altering the classification of firearms equipped with stabilizing braces would likely affect millions of owners.

Today, some firearms enthusiasts view GCA-regulated handguns and pistol grip firearms equipped with stabilizing braces as viable alternatives to the more strictly NFA-regulated short-barreled rifles and shotguns. At the same time, gun control advocates have called on ATF to reverse its determinations with regard to stabilizing braces, as well as, larger, heavier handguns and other pistol grip firearms. They view such firearms as "assault pistols" or "assault shotguns," and have called on Congress to reconstitute an assault weapons ban.

**App. 8**

**William J. Krouse**, Specialist in Domestic Security and Crime Policy

IF11763

# Disclaimer

This document was prepared by the Congressional Research Service (CRS). CRS serves as nonpartisan shared staff to congressional committees and Members of Congress. It operates solely at the behest of and under the direction of Congress. Information in a CRS Report should not be relied upon for purposes other than public understanding of information that has been provided by CRS to Members of Congress in connection with CRS's institutional role. CRS Reports, as a work of the United States Government, are not subject to copyright protection in the United States. Any CRS Report may be reproduced and distributed in its entirety without permission from CRS. However, as a CRS Report may include copyrighted images or material from a third party, you may need to obtain the permission of the copyright holder if you wish to copy or otherwise use copyrighted material.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

_Martinsburg , West Virginia 25405_      **903050:MMK**
www.atf.gov                                             **3311/2013-0172**

NOV 2 6 2012

This refers to your recent correspondence and accompanying sample sent to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), for evaluation. You are asking if the addition of this sample, a buffer tube forearm brace, would convert a firearm in a manner that would cause it to be classified as a "rifle" and thus a "firearm" regulated by the National Firearms Act (NFA), specifically, 26 U.S.C. § 5845(a).

The FTB evaluation revealed that the submitted device is constructed of a foam-type rubber (similar to that used in developing prosthetic devices) and two Velcro straps. The device (see enclosed photos) is molded to a pistol style buffer tube for an AR-type firearm, and is shaped to form an upside down "U".

A shooter would insert his or her forearm into the device while gripping the pistol's handgrip— then tighten the Velcro straps for additional support and retention. Thus configured, the device provides the shooter with additional support of a firearm while it is still held and operated with one hand. We find that the device is not designed or intended to fire a weapon from the shoulder.

Based on our evaluation, FTB finds that the submitted forearm brace, when attached to a firearm, does not convert that weapon to be fired from the shoulder and would not alter the classification of a pistol or other firearm. While a firearm so equipped would still be regulated by the Gun Control Act, 18 U.S.C. § 921(a)(3), such a firearm would not be subject to NFA controls.

To facilitate the return of your submitted sample, please arrange for return shipping. This may be done via a UPS "cal-tag" pick-up or simply by using a return shipping label from the U.S. Postal Service or any common carrier. If you wish to accomplish return via "call-tag," please give FTB prior notice so the item can be readied for shipping since UPS will only make three pick-up attempts.

App. 10

We thank you for your inquiry and trust the foregoing is responsive.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure



**ATF** Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribe to updates from Bureau of Alcoh
Firearms and Explosives

Email Address                           e.g. name@e
[Subscribe]

## ATF Firearms: Open Letter on the Redesign of "Stabilizing Braces"

Bureau of Alcohol, Tobacco, Firearms and Explosives sent this bulletin at 01/16/2015 04:33 PM EST

**Share Bulletin**

### OPEN LETTER ON THE REDESIGN OF "STABILIZING BRACES"

The Firearms and Ammunition Technology Division (FATD), Bureau of Alcohol, Tobacco, Firearms and Explosives (A͟T͟F) in the public concerning the proper use of devices recently marketed as "stabilizing braces." These devices are described as "a shooter͟ ͟ ͟ ͟a͟n͟d͟ ͟t͟h͟a͟t͟ ͟d͟e͟s͟i͟g͟n͟e͟d͟ improve the single-handed shooting performance of buffer tube equipped pistols." The device claims to enhance accuracy and reduce felt recoil when using an AR-style pistol.

These items are intended to improve accuracy by using the operator's forearm to provide stable support for the AR-type pistol. ATF has previously determined that attaching the brace to a firearm does not alter the classification of the firearm or subject the firearm to National Firearms Act (NFA) control. However, this classification is based upon the use of the device as designed. When the device is redesigned for use as a shoulder stock on a handgun with a rifled barrel under 16 inches in length, the firearm is properly classified as a firearm under the NFA.

The NFA, 26 USCS § 5845, defines "firearm," in relevant part, as "a shotgun having a barrel or barrels of less than 18 inches in length" and "a rifle having a barrel or barrels of less than 16 inches in length." That section defines both "rifle" and "shotgun" as "a weapon designed or *redesigned*, made or remade, *and intended to be fired from the shoulder*…." (Emphasis added).

Pursuant to the plain language of the statute, ATF and its predecessor agency have long held that a pistol with a barrel less than 16 inches in length and an attached shoulder stock is a NFA "firearm." For example, in Revenue Ruling 61-45, Luger and Mauser pistols "having a barrel of less than 16 inches in length with an attachable shoulder stock affixed" were each classified as a "short barrel rifle…within the purview of the National Firearms Act."

In classifying the originally submitted design, ATF considered the objective design of the item as well as the stated purpose of the item. In submitting this device for classification, the designer noted that

> *The intent of the buffer tube forearm brace is to facilitate one handed firing of the AR15 pistol for those with limited strength or mobility due to a handicap. It also performs the function of sufficiently padding the buffer tube in order to reduce bruising to the forearm while firing with one hand. Sliding and securing the brace onto ones forearm and latching the Velcro straps, distributes the weight of the weapon evenly and assures a snug fit. Therefore, it is no longer necessary to dangerously "muscle" this large pistol during the one handed aiming process, and recoil is dispersed significantly, resulting in more accurate shooting without compromising safety or comfort.*

In the classification letter of November 26, 2012, ATF noted that a "shooter would insert his or her forearm into the device while gripping the pistol's handgrip-then tighten the Velcro straps for additional support and retention. Thus configured, the device provides the shooter with additional support of a firearm while it is still held and operated with one hand." When strapped to the wrist and used as designed, it is clear the device does not allow the firearm to be fired from the shoulder. Therefore, ATF concluded that, pursuant to the information provided, "the device is not designed or intended to fire a weapon from the shoulder." In making the classification ATF determined that the objective design characteristics of the stabilizing brace supported the stated intent.

ATF hereby confirms that if used as designed—to assist shooters in stabilizing a handgun while shooting with a single hand—the device is not considered a shoulder stock and therefore may be attached to a handgun without making a NFA firearm. However, ATF has received numerous inquiries regarding alternate uses for this device, including use as a shoulder stock. Because the NFA defines both rifle and shotgun to include any "weapon designed or *redesigned*, made or *remade, and intended to be fired from the shoulder*," any person who *redesigns* a stabilizing brace for use as a shoulder stock makes a NFA firearm when attached to a pistol with a rifled barrel under 16 inches in length or a handgun with a smooth bore under 18 inches in length.

The GCA does not define the term "redesign" and therefore ATF applies the common meaning. "Redesign" is defined as "to alter the appearance or function of." See e.g. Webster's II New College Dictionary, Third Ed. (2005). This is not a novel interpretation. For example ATF has previously advised that an individual possesses a destructive device when possessing anti-personnel ammunition with an otherwise unregulated 37/38mm flare launcher. See ATF Ruling 95-3. Further, ATF has advised that even use of an unregulated flare and flare launcher as a weapon results in the making of a NFA weapon. Similarly, ATF has advised that, although otherwise unregulated, the use of certain nail guns as weapons may result in classification as an "any other weapon."

The pistol stabilizing brace was neither "designed" nor approved to be used as a shoulder stock, and therefore use as a shoulder stock constitutes a "redesign" of the device because a possessor has changed the very function of the item. Any individual letters stating otherwise are contrary to the plain language of the NFA, misapply Federal law, and are hereby revoked.

Any person who intends to use a handgun stabilizing brace as a shoulder stock on a pistol (having a rifled barrel under 16 inches in length or a smooth bore firearm with a barrel under 18 inches in length) must first file an ATF Form 1 and pay the applicable tax because the resulting firearm will be subject to all provisions of the NFA.

If you have any questions about the issues addressed in this letter, you may contact the Firearms and Ammunition Technology Division at fire_tech@atf.gov or by phone at (304) 616-4300.

Max M. Kingery
Acting Chief
Firearms Technology Criminal Branch
Firearms and Ammunition Technology Division

*This letter can also be found on http://www.atf.gov/content/Firearms/firearms-industry under the "News" tab.

Update your subscriptions, modify your password or e-mail address, or stop subscriptions at any time on your Subscriber Preferences Page. You will need to use your e-mail address to log in. If you have questions or problems with the subscription service, please contact subscriberhelp.govdelivery.com.

This service is provided to you at no charge by The Bureau of Alcohol, Tobacco, Firearms and Explosives.
Powered by



Privacy Policy | Cookie Statement | Help

App. 13

U.S. Department of Justice

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Assistant Director*

Washington, DC 20226
www.atf.gov

MAR 2 1 2017

90000:GM
5000

Mark Barnes, Esq.
Outside Counsel to SB Tactical, LLC
1350 Eye St. NW, Suite 260
Washington, D.C. 20005

     Re:  Reversal of ATF Open Letter on the Redesign of "Stabilizing Braces"

Dear Mr. Barnes:

I am writing in response to your letter dated January 5, 2017, to Thomas Brandon, the Acting
Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) on behalf of your
client SB Tactical, LLC.  Your letter requests that ATF reconsider its position articulated in
ATF's "*Open Letter on the Redesign of 'Stabilizing Braces'*" issued on January 16, 2015
(hereafter, the "*Open Letter*").  The *Open Letter* made it clear that stabilizing braces are perfectly
legal accessories for large handguns or pistols. However, when employed as a shoulder stock
with a firearm with a barrel less than 18 inches in length, the result would be making an
unregistered NFA firearm. Your letter challenges the legal correctness of this latter conclusion
and asks that ATF disavow it.  Since receiving your letter we have re-examined the conclusions
contained in the *Open Letter.*  Although we stand by those conclusions, we agree that the *Open
Letter* may have generated some confusion concerning the analytical framework by which those
conclusions were reached.  Thank you for the opportunity to clarify our analysis.

## Background

As you are aware, the NFA, 26 USC § 5845, defines "firearm," in relevant part, as "a shotgun
having a barrel or barrels of less than 18 inches in length" and "a rifle having a barrel or barrels
of less than 16 inches in length."  That section defines both "rifle" and "shotgun" as "a weapon
designed or redesigned, made or remade, and intended to be fired from the shoulder…."
Pursuant to the plain language of the statute, ATF and its predecessor agency have long held that
a pistol with a barrel less than 16 inches in length and an attached shoulder stock is an NFA
"firearm."

-2-

Mark Barnes, Esq.

In 2012, ATF determined that a specific arm-stabilizing brace—marketed as "a shooter's aid" to assist in shooting large buffer tube equipped pistols—was not a shoulder stock and therefore could be attached to a firearm without that act constituting the making of an NFA firearm. Following this determination, the firearms industry and members of the public sought clarification on whether the stabilizing brace may lawfully be used as a shoulder stock. To respond to these inquiries, ATF published the January 2015 *Open Letter*. In that letter ATF confirmed its previous determination that the use of stabilizing braces, as designed, would not create a short-barreled rifle when attached to a firearm. ATF also advised, however, that because the stabilizing brace was not designed as a shoulder stock, "use" of the device as a shoulder stock would constitute a "redesign" of the firearm to which it was attached, resulting in the classification of that firearm as a short-barreled rifle.

Your letter asserts that ATF's analysis of "use" is untenable because the mere use of an otherwise lawfully possessed item for a purpose for which it was not designed does not constitute "redesign" as defined in the NFA. You support this argument with analogies involving items that are not firearms (*i.e.*, misuse of a screwdriver or hammer), and by distinguishing a prior ATF ruling, ATF Ruling 95-2, on which the *Open Letter* relies in its analysis of use. The unstated, but logical, result of your argument is that stabilizing braces, although designed, intended and marketed for use only to shoot from the arm, could be attached to a firearm and used as a shoulder stock without falling within the purview of the NFA. Under certain circumstances, such an absolute result is simply not consistent with the letter and intent of the NFA, as we illustrate in the next paragraph.

An accessory that can be attached to a firearm in any one of several configurations must be evaluated to determine whether attaching it in each of those configurations constitutes "making" an NFA firearm under both objective and subjective analyses. With respect to stabilizing braces, ATF has concluded that attaching the brace to a handgun as a forearm brace does not "make" a short-barreled rifle because in the configuration as submitted to and approved by FATD, it is not intended to be and cannot comfortably be fired from the shoulder. If, however, the shooter/possessor takes affirmative steps to configure the device for use as a shoulder-stock— for example, configuring the brace so as to permanently affix it to the end of a buffer tube, (thereby creating a length that has no other purpose than to facilitate its use as a stock), removing the arm-strap, or otherwise undermining its ability to be used as a brace – and then in fact shoots the firearm from the shoulder using the accessory as a shoulder stock, that person has objectively "redesigned" the firearm for purposes of the NFA. This conclusion is not based upon the mere fact that the firearm was fired from the shoulder at some point. Therefore, an NFA firearm has not necessarily been made when the device is not re-configured for use as a shoulder stock – even if the attached firearm happens to be fired from the shoulder.

-3-

Mark Barnes, Esq.

To the extent the January 2015 *Open Letter* implied or has been construed to hold that incidental, sporadic, or situational "use" of an arm-brace (in its original approved configuration) equipped firearm from a firing position at or near the shoulder was sufficient to constitute "redesign," such interpretations are incorrect and not consistent with ATF's interpretation of the statute or the manner in which it has historically been enforced.

In that regard, we also note that the "making" of an NFA firearm pursuant to 26 U.S.C. § 5821 includes the altering of an existing firearm such that, after the alteration, the firearm meets one of the enumerated descriptions in 26 U.S.C. § 5845(a), whether or not that alteration is permanent. So, for example, one "makes" a short-barreled shotgun subject to the NFA by replacing a 20 inch barrel with a 16 inch barrel, even though that configuration may not be permanent. Nothing in the NFA requires that the "making" be irreversible. Similarly, an item that functions as a stock if attached to a handgun in a manner that serves the objective purpose of allowing the firearm to be fired from the shoulder may result in "making" a short-barreled rifle, even if the attachment is not permanent. *See*, Revenue Ruling 61-45. The fact that the item may allow, or even be intended by its manufacturer for other lawful purposes, does not affect the NFA analysis.

Again, to the extent the *Open Letter* was confusing, we appreciate the opportunity to clarify our position. Thank you for your inquiry regarding this matter.

Sincerely,

Marvin G. Richardson
Assistant Director
Enforcement Programs and Services



**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Commercially available firearms equipped with a "stabilizing brace" that are short-barreled rifles*

*May not be marketed by original manufacturer in displayed configuration, rather a wholesaler or retailer

This is not an exhaustive list of commercially available firearms equipped with a "stabilizing brace" that are short-barreled rifles. However, this list is representative of how ATF will apply the definition of "rifle" to firearms that are equipped with a "stabilizing brace." For purposes of this document, the term "short-barreled rifle" is used to refer to rifles with a barrel or barrels of less than sixteen inches, that are subject to the provisions of the NFA.

# AR-type Platforms

App. 19

# Ruger, model AR-556 with SBA3 Attached – Short-barreled Rifle




App. 20

# Q, model Honey Badger with HBPDW Attached – Short-barreled Rifle




# Q, model Sugar Weasel with SBA3 Attached – Short-barreled Rifle




# CMMG, model Banshee with SBA3 Attached – Short-barreled Rifle




















App. 28

Smith & Wesson, model M&P 15 with SBA3 Attached – Short-barreled Rifle






Springfield, model Victor with Magpul BTR Attached – Short-barreled Rifle




App. 31













# AK-type Platforms







# H&K-type Platforms




# Pistol Caliber Configuration (PCC)-type Platforms

 

# CZ, model Scorpion EVO 3 S1 with SBT EVO Attached – Short-barreled Rifle










# IWI, model UZI Pro Pistol with SBX-K Attached – Short-barreled Rifle

















# Other Rifle-type Configurations










# Q, model Mini Fix with Proprietary Brace – Short-barreled Rifle





# Firearms Commerce

# in the

# United States

## Annual Statistical Update

## 2020

## United States Department of Justice
## Bureau of Alcohol, Tobacco, Firearms
## and Explosives

# Exhibit 1.  Firearms Manufactured (1986-2018)

| Calendar Year | Pistols | Revolvers | Rifles | Shotguns | Misc. Firearms[1] | Total Firearms |
|---|---|---|---|---|---|---|
| 1986 | 662,973 | 761,414 | 970,507 | 641,482 | 4,558 | 3,040,934 |
| 1987 | 964,561 | 722,512 | 1,007,661 | 857,949 | 6,980 | 3,559,663 |
| 1988 | 1,101,011 | 754,744 | 1,144,707 | 928,070 | 35,345 | 3,963,877 |
| 1989 | 1,404,753 | 628,573 | 1,407,400 | 935,541 | 42,126 | 4,418,393 |
| 1990 | 1,371,427 | 470,495 | 1,211,664 | 848,948 | 57,434 | 3,959,968 |
| 1991 | 1,378,252 | 456,966 | 883,482 | 828,426 | 15,980 | 3,563,106 |
| 1992 | 1,669,537 | 469,413 | 1,001,833 | 1,018,204 | 16,849 | 4,175,836 |
| 1993 | 2,093,362 | 562,292 | 1,173,694 | 1,144,940 | 81,349 | 5,055,637 |
| 1994 | 2,004,298 | 586,450 | 1,316,607 | 1,254,926 | 10,936 | 5,173,217 |
| 1995 | 1,195,284 | 527,664 | 1,411,120 | 1,173,645 | 8,629 | 4,316,342 |
| 1996 | 987,528 | 498,944 | 1,424,315 | 925,732 | 17,920 | 3,854,439 |
| 1997 | 1,036,077 | 370,428 | 1,251,341 | 915,978 | 19,680 | 3,593,504 |
| 1998 | 960,365 | 324,390 | 1,535,690 | 868,639 | 24,506 | 3,713,590 |
| 1999 | 995,446 | 335,784 | 1,569,685 | 1,106,995 | 39,837 | 4,047,747 |
| 2000 | 962,901 | 318,960 | 1,583,042 | 898,442 | 30,196 | 3,793,541 |
| 2001 | 626,836 | 320,143 | 1,284,554 | 679,813 | 21,309 | 2,932,655 |
| 2002 | 741,514 | 347,070 | 1,515,286 | 741,325 | 21,700 | 3,366,895 |
| 2003 | 811,660 | 309,364 | 1,430,324 | 726,078 | 30,978 | 3,308,404 |
| 2004 | 728,511 | 294,099 | 1,325,138 | 731,769 | 19,508 | 3,099,025 |
| 2005 | 803,425 | 274,205 | 1,431,372 | 709,313 | 23,179 | 3,241,494 |
| 2006 | 1,021,260 | 385,069 | 1,496,505 | 714,618 | 35,872 | 3,653,324 |
| 2007 | 1,219,664 | 391,334 | 1,610,923 | 645,231 | 55,461 | 3,922,613 |
| 2008 | 1,609,381 | 431,753 | 1,734,536 | 630,710 | 92,564 | 4,498,944 |
| 2009 | 1,868,258 | 547,195 | 2,248,851 | 752,699 | 138,815 | 5,555,818 |
| 2010 | 2,258,450 | 558,927 | 1,830,556 | 743,378 | 67,929 | 5,459,240 |
| 2011 | 2,598,133 | 572,857 | 2,318,088 | 862,401 | 190,407 | 6,541,886 |
| 2012 | 3,487,883 | 667,357 | 3,168,206 | 949,010 | 306,154 | 8,578,610 |
| 2013 | 4,441,726 | 725,282 | 3,979,570 | 1,203,072 | 495,142 | 10,844,792 |
| 2014 | 3,633,454 | 744,047 | 3,379,549 | 935,411 | 358,165 | 9,050,626 |
| 2015 | 3,557,199 | 885,259 | 3,691,799 | 777,273 | 447,131 | 9,358,661 |
| 2016 | 4,720,075 | 856,291 | 4,239,335 | 848,617 | 833,123 | 11,497,441 |
| 2017 | 3,691,010 | 720,917 | 2,504,092 | 653,139 | 758,634 | 8,327,792 |
| 2018 | 3,881,158 | 664,835 | 2,880,536 | 536,126 | 1,089,973 | 9,052,628 |

Source: ATF's Annual Firearms Manufacturing and Exportation Report (AFMER).

[1]Miscellaneous firearms are any firearms not specifically categorized in any of the firearms categories defined on the ATF Form 5300.11 Annual Firearms Manufacturing and Exportation Report. (Examples of miscellaneous firearms would include pistol grip firearms, starter guns, and firearm frames and receivers.)

The AFMER report excludes production for the U.S. military but includes firearms purchased by domestic law enforcement agencies. The report also includes firearms manufactured for export.

AFMER data is not published until one year after the close of the calendar year reporting period because the proprietary data furnished by filers is protected from immediate disclosure by the Trade Secrets Act.  For example, calendar year 2012 data was due to ATF by April 1, 2013, but not published until January 2014.

**App. 56**



# Exhibit 2: Firearms Manufacturers' Exports (1986 – 2018)

| Calendar Year | Pistols | Revolvers | Rifles | Shotguns | Misc. Firearms[1] | Total Firearms |
|---|---|---|---|---|---|---|
| 1986 | 16,511 | 104,571 | 37,224 | 58,943 | 199 | 217,448 |
| 1987 | 24,941 | 134,611 | 42,161 | 76,337 | 9,995 | 288,045 |
| 1988 | 32,570 | 99,289 | 53,896 | 68,699 | 2,728 | 257,182 |
| 1989 | 41,970 | 76,494 | 73,247 | 67,559 | 2,012 | 261,282 |
| 1990 | 73,398 | 106,820 | 71,834 | 104,250 | 5,323 | 361,625 |
| 1991 | 79,275 | 110,058 | 91,067 | 117,801 | 2,964 | 401,165 |
| 1992 | 76,824 | 113,178 | 90,015 | 119,127 | 4,647 | 403,791 |
| 1993 | 59,234 | 91,460 | 94,272 | 171,475 | 14,763 | 431,204 |
| 1994 | 93,959 | 78,935 | 81,835 | 146,524 | 3,220 | 404,473 |
| 1995 | 97,969 | 131,634 | 90,834 | 101,301 | 2,483 | 424,221 |
| 1996 | 64,126 | 90,068 | 74,557 | 97,191 | 6,055 | 331,997 |
| 1997 | 44,182 | 63,656 | 76,626 | 86,263 | 4,354 | 275,081 |
| 1998 | 29,537 | 15,788 | 65,807 | 89,699 | 2,513 | 203,344 |
| 1999 | 34,663 | 48,616 | 65,669 | 67,342 | 4,028 | 220,318 |
| 2000 | 28,636 | 48,130 | 49,642 | 35,087 | 11,132 | 172,627 |
| 2001 | 32,151 | 32,662 | 50,685 | 46,174 | 10,939 | 172,611 |
| 2002 | 22,555 | 34,187 | 60,644 | 31,897 | 1,473 | 150,756 |
| 2003 | 16,340 | 26,524 | 62,522 | 29,537 | 6,989 | 141,912 |
| 2004 | 14,959 | 24,122 | 62,403 | 31,025 | 7,411 | 139,920 |
| 2005 | 19,196 | 29,271 | 92,098 | 46,129 | 7,988 | 194,682 |
| 2006 | 144,779 | 28,120 | 102,829 | 57,771 | 34,022 | 367,521 |
| 2007 | 45,053 | 34,662 | 80,594 | 26,949 | 17,524 | 204,782 |
| 2008 | 54,030 | 28,205 | 104,544 | 41,186 | 523 | 228,488 |
| 2009 | 56,402 | 32,377 | 61,072 | 36,455 | 8,438 | 194,744 |
| 2010 | 80,041 | 25,286 | 76,518 | 43,361 | 16,771 | 241,977 |
| 2011 | 121,035 | 23,221 | 79,256 | 54,878 | 18,498 | 296,888 |
| 2012 | 128,313 | 19,643 | 81,355 | 42,858 | 15,385 | 287,554 |
| 2013 | 167,653 | 21,236 | 131,718 | 49,766 | 22,748 | 393,121 |
| 2014 | 126,316 | 25,521 | 207,934 | 60,377 | 784 | 420,932 |
| 2015 | 140,787 | 22,666 | 159,707 | 18,797 | 1,499 | 343,456 |
| 2016 | 172,408 | 24,587 | 147,044 | 24,668 | 8,111 | 376,818 |
| 2017 | 275,424 | 21,676 | 158,871 | 29,997 | 2,332 | 488,300 |
| 2018 | 333,266 | 21,498 | 165,573 | 27,774 | 6,126 | 554,237 |

Source: ATF Annual Firearms Manufacturing and Exportation Report (AFMER).

[1]Miscellaneous firearms are any firearms not specifically categorized in any of the firearms categories defined on the ATF Form 5300.11 Annual Firearms Manufacturing and Exportation Report. (Examples of miscellaneous firearms would include pistol grip firearms, starter guns, and firearm frames and receivers.)

The AFMER report excludes production for the U.S. military but includes firearms purchased by domestic law enforcement agencies.

This exhibit does not include statistics related to the National Firearms Act (NFA).



# Exhibit 3. Firearms Imports (1986 - 2019)

| Calendar Year | Shotguns | Rifles | Handguns | Total |
|---|---|---|---|---|
| 1986 | 201,000 | 269,000 | 231,000 | 701,000 |
| 1987 | 307,620 | 413,780 | 342,113 | 1,063,513 |
| 1988 | 372,008 | 282,640 | 621,620 | 1,276,268 |
| 1989 | 274,497 | 293,152 | 440,132 | 1,007,781 |
| 1990 | 191,787 | 203,505 | 448,517 | 843,809 |
| 1991 | 116,141 | 311,285 | 293,231 | 720,657 |
| 1992 | 441,933 | 1,423,189 | 981,588 | 2,846,710 |
| 1993 | 246,114 | 1,592,522 | 1,204,685 | 3,043,321 |
| 1994 | 117,866 | 847,868 | 915,168 | 1,880,902 |
| 1995 | 136,126 | 261,185 | 706,093 | 1,103,404 |
| 1996 | 128,456 | 262,568 | 490,554 | 881,578 |
| 1997 | 106,296 | 358,937 | 474,182 | 939,415 |
| 1998 | 219,387 | 248,742 | 531,681 | 999,810 |
| 1999 | 385,556 | 198,191 | 308,052 | 891,799 |
| 2000 | 331,985 | 298,894 | 465,903 | 1,096,782 |
| 2001 | 428,330 | 227,608 | 710,958 | 1,366,896 |
| 2002 | 379,755 | 507,637 | 741,845 | 1,629,237 |
| 2003 | 407,402 | 428,837 | 630,263 | 1,466,502 |
| 2004 | 507,050 | 564,953 | 838,856 | 1,910,859 |
| 2005 | 546,403 | 682,100 | 878,172 | 2,106,675 |
| 2006 | 606,820 | 659,393 | 1,166,309 | 2,432,522 |
| 2007 | 725,752 | 631,781 | 1,386,460 | 2,743,993 |
| 2008 | 535,960 | 602,364 | 1,468,062 | 2,606,386 |
| 2009 | 558,679 | 864,010 | 2,184,417 | 3,607,106 |
| 2010 | 509,913 | 547,449 | 1,782,585 | 2,839,947 |
| 2011 | 529,056 | 998,072 | 1,725,276 | 3,252,404 |
| 2012 | 973,465 | 1,243,924 | 2,627,201 | 4,844,590 |
| 2013 | 936,235 | 1,507,776 | 3,095,528 | 5,539,539 |
| 2014 | 648,339 | 791,892 | 2,185,037 | 3,625,268 |
| 2015 | 644,293 | 815,817 | 2,470,101 | 3,930,211 |
| 2016 | 736,482 | 729,452 | 3,671,837 | 5,137,771 |
| 2017 | 632,105 | 572,309 | 3,287,842 | 4,492,256 |
| 2018 | 713,931 | 652,031 | 2,939,889 | 4,305,851 |
| 2019 | 743,252 | 648,703 | 2,594,708 | 3,986,663 |

Source: ATF and United States International Trade Commission.

Statistics prior to 1992 are for fiscal years; 1992 is a transition year with five quarters.



# Exhibit 4.  Importation Applications (1986 - 2019)

| Fiscal Year | Licensed Importer | Military* | Other | Total |
|---|---|---|---|---|
| 1986 | 7,728 | 9,434 | 2,631 | 19,793 |
| 1987 | 7,833 | 8,059 | 2,130 | 18,022 |
| 1988 | 7,711 | 7,680 | 2,122 | 17,513 |
| 1989 | 7,950 | 8,293 | 2,194 | 18,437 |
| 1990 | 8,292 | 8,696 | 2,260 | 19,248 |
| 1991 | 8,098 | 10,973 | 2,412 | 21,483 |
| 1992 | 7,960 | 9,222 | 2,623 | 19,805 |
| 1993 | 7,591 | 6,282 | 2,585 | 16,458 |
| 1994 | 6,704 | 4,570 | 3,024 | 14,298 |
| 1995 | 5,267 | 2,834 | 2,548 | 10,649 |
| 1996 | 6,340 | 2,792 | 2,395 | 11,527 |
| 1997 | 8,288 | 2,069 | 1,395 | 11,752 |
| 1998 | 8,767 | 2,715 | 1,536 | 13,019 |
| 1999 | 9,505 | 2,235 | 1,036 | 12,776 |
| 2000 | 7,834 | 2,885 | 1,416 | 12,135 |
| 2001 | 9,639 | 3,984 | 1,569 | 15,192 |
| 2002 | 9,646 | 6,321 | 3,199 | 19,166 |
| 2003 | 8,160 | 2,264 | 2,081 | 12,505 |
| 2004 | 7,539 | 1,392 | 1,819 | 10,750 |
| 2005 | 7,539 | 1,320 | 1,746 | 10,605 |
| 2006 | 8,537 | 1,180 | 1,505 | 11,222 |
| 2007 | 8,004 | 1,081 | 1,236 | 10,321 |
| 2008 | 7,610 | 718 | 980 | 9,308 |
| 2009 | 7,967 | 504 | 970 | 9,441 |
| 2010 | 7,367 | 823 | 1,088 | 9,278 |
| 2011 | 7,647 | 641 | 959 | 9,247 |
| 2012 | 8,408 | 420 | 895 | 9,723 |
| 2013 | 9,964 | 319 | 597 | 10,880 |
| 2014 | 8,529 | 255 | 429 | 9,213 |
| 2015 | 6,078 | 318 | 897 | 7,293 |
| 2016 | 6,154 | 220 | 814 | 7,188 |
| 2017 | 5,859 | 309 | 685 | 6,853 |
| 2018 | 6,631 | 289 | 670 | 7,590 |
| 2019 | 7,040 | 380 | 711 | 8,131 |

Source: ATF Firearms and Explosives Import System (FEIS)

Import data excludes temporary permits issued to nonimmigrant aliens.

*Depicts ATF Form 6A Part 2 (5330.3C)

Effective April 8, 2014 Import permits are valid for two years.



# Exhibit 5: Firearms Imported into the United States by Country 2019

| | Handguns | Rifles | Shotguns | Total Firearms |
|---|---|---|---|---|
| Brazil | 695,584 | 74,537 | 57,851 | 827,972 |
| Austria | 811,574 | 7,537 | 145 | 819,256 |
| Turkey | 95,208 | 2,115 | 382,709 | 480,032 |
| Italy | 159,945 | 13,131 | 175,304 | 348,380 |
| Germany | 258,281 | 57,057 | 2,178 | 317,516 |
| Croatia | 185,241 | 183 | 295 | 185,719 |
| Czech Republic | 151,486 | 29,076 | 80 | 180,642 |
| Canada | 4,599 | 147,515 | 1,170 | 153,284 |
| China | 0 | 9,711 | 116,767 | 126,478 |
| Philippines | 93,612 | 8,974 | 100 | 102,686 |
| Japan | 1 | 77,327 | 828 | 78,156 |
| Spain | 566 | 58,544 | 601 | 59,711 |
| Belgium | 26,088 | 25,835 | 69 | 51,992 |
| Finland | 320 | 46,609 | 0 | 46,929 |
| Romania | 22,094 | 20,759 | 0 | 42,853 |
| Israel | 23,743 | 3,366 | 0 | 27,109 |
| Argentina | 25,625 | 0 | 0 | 25,625 |
| Portugal | 0 | 24,322 | 31 | 24,353 |
| United Kingdom | 42 | 17,317 | 4,477 | 21,836 |
| Switzerland | 15,445 | 2,849 | 4 | 18,298 |
| Serbia | 8938 | 4,029 | 0 | 12,967 |
| Poland | 5,937 | 4,342 | 0 | 10,279 |
| Russia | 0 | 4,620 | 182 | 4,802 |
| Ukraine | 0 | 3,200 | 0 | 3,200 |
| Sweden | 130 | 2,936 | 0 | 3,066 |
| Slovakia | 2,973 | 0 | 0 | 2,973 |
| Bulgaria | 592 | 1,500 | 0 | 2,092 |
| Hungary | 1,888 | 87 | 29 | 2,004 |
| Netherlands | 1,930 | 0 | 0 | 1,930 |
| Slovenia | 1,878 | 0 | 0 | 1,878 |
| France | 756 | 909 | 8 | 1,673 |
| Other[2] | 232 | 316 | 424 | 972 |
| Total | 2,594,708 | 648,703 | 743,252 | 3,986,663 |

[1]On May 26, 1994, the United States instituted a firearms imports embargo against China. Sporting shotguns, however, are exempt from the embargo.

[2]Imports of fewer than 1,000 per country.

Imports from Afghanistan, Belarus, Burma, China, Cuba, Democratic Republic of Congo, Haiti, Iran, Iraq, Libya, Mongolia, North Korea, Rwanda, Somalia Sudan, Syria, Unita (Angola), Vietnam, may include surplus military curio and relic firearms that were manufactured in these countries prior to becoming proscribed or embargoed and had been outside those proscribed countries for the preceding five years prior to import. Imports may also include those that obtained a waiver from the U.S. State Department.

Imports from Georgia, Kazakstan, Kyrgyzstan, Moldova, Russian Federation, Turkmenistan, Ukraine, Uzbekistan are limited to firearms enumerated on the Voluntary Restraint Agreement (VRA).



# Exhibit 6.  National Firearms Act Tax Revenues and Related Activities (1984 - 2019)

| Fiscal Year[1] | Occupational Tax Paid[2] | Transfer and Making Tax Paid | Enforcement Support[3] | |
|---|---|---|---|---|
| | | | Certifications | Records Checks |
| 1984 | $596,000 | $666,000 | 1,196 | 2,771 |
| 1985 | $606,000 | $594,000 | 921 | 3,682 |
| 1986 | $667,000 | $1,372,000 | 690 | 3,376 |
| 1987 | $869,000 | $1,576,000 | 575 | 4,135 |
| 1988 | $2,095,000 | $1,481,000 | 701 | 3,738 |
| 1989 | $1,560,000 | $1,527,000 | 1,196 | 6,128 |
| 1990 | $1,442,000 | $1,308,000 | 666 | 7,981 |
| 1991 | $1,556,000 | $1,210,000 | 764 | 7,857 |
| 1992 | $1,499,000 | $1,237,000 | 1,257 | 8,582 |
| 1993 | $1,493,000 | $1,264,000 | 1,024 | 7,230 |
| 1994 | $1,444,000 | $1,596,000 | 586 | 6,283 |
| 1995 | $1,007,000 | $1,311,000 | 882 | 5,677 |
| 1996 | $1,143,000 | $1,402,000 | 529 | 5,215 |
| 1997 | $1,284,000 | $1,630,000 | 488 | 4,395 |
| 1998 | $1,299,000 | $1,969,000 | 353 | 3,824 |
| 1999 | $1,330,000 | $2,422,000 | 345 | 3,994 |
| 2000 | $1,399,000 | $2,301,000 | 144 | 2,159 |
| 2001 | $1,456,000 | $2,800,000 | 402 | 5,156 |
| 2002 | $1,492,000 | $1,510,000 | 441 | 6,381 |
| 2003 | $1,758,000 | $2,699,000 | 401 | 6,597 |
| 2004 | $1,640,000 | $3,052,000 | 435 | 6,191 |
| 2005 | $1,659,000 | $2,810,000 | 447 | 6,218 |
| 2006 | $1,709,000 | $3,951,000 | 327 | 6,331 |
| 2007 | $1,815,000 | $4,890,000 | 530 | 7,468 |
| 2008 | $1,950,000 | $5,742,000 | 375 | 5,872 |
| 2009 | $2,125,000 | $7,971,000 | 418 | 5,736 |
| 2010 | $2,530,000 | $7,184,000 | 267 | 5,883 |
| 2011 | $2,952,000 | $9,576,000 | 287 | 6,313 |
| 2012 | $3,628,000 | $12,814,000 | 390 | 7,103 |
| 2013 | $4,294,000 | $18,182,000 | 501 | 7,138 |
| 2014 | $4,837,000 | $22,678,000 | 367 | 6,172 |
| 2015 | $5,417,000 | $32,462,000 | 338 | 5,650 |
| 2016 | $6,018,000 | $62,596,000 | 397 | 6,547 |
| 2017 | $6,371,000 | $22.972,000 | 469 | 6,749 |
| 2018 | $6,753,000 | $33,371,000 | 537 | 6,130 |
| 2019 | $7,014,000 | $37,285,000 | 447 | 5,426 |

Source:  ATF's National Firearms Registration and Transfer Record (NFRTR).

[1]Data from 1997 - 2000 were based on calendar year data.

[2]Special occupational tax revenues for FY 1990 - 1996 include collections made during the fiscal year for prior tax years. Importers, manufacturers, or dealers in NFA firearms are subject to a yearly occupational tax.

[3]ATF searches the NFRTR in support of criminal investigations and regulatory inspections in order to determine whether persons are legally in possession of NFA weapons and whether transfers are made lawfully.

Data from 2000-2010 for Certifications and Records Checks was corrected in the 2012 update.

# Exhibit 7. National Firearms Act Firearms Processed by Form Type
## (1990 - 2019)

| Calendar Year[1] | Application to Make NFA Firearms (ATF Form 1) | Manufactured and Imported (ATF Form 2) | Application for Tax Exempt Transfer Between Licensees (ATF Form 3) | Application for Taxpaid Transfer (ATF Form 4) | Application for Tax-Exempt Transfer[2] (ATF Form 5) | Exported (ATF Form 9) | Total[3] |
|---|---|---|---|---|---|---|---|
| 1990 | 399 | 66,084 | 23,149 | 7,024 | 54,959 | 21,725 | 173,340 |
| 1991 | 524 | 80,619 | 19,507 | 5,395 | 44,146 | 40,387 | 190,578 |
| 1992 | 351 | 107,313 | 26,352 | 6,541 | 45,390 | 22,120 | 208,067 |
| 1993 | 310 | 70,342 | 22,071 | 7,388 | 60,193 | 24,041 | 184,345 |
| 1994 | 1,076 | 97,665 | 27,950 | 7,600 | 67,580 | 34,242 | 236,113 |
| 1995 | 1,226 | 95,061 | 18,593 | 8,263 | 60,055 | 31,258 | 214,456 |
| 1996 | 1,174 | 103,511 | 16,931 | 6,418 | 72,395 | 40,439 | 240,868 |
| 1997 | 855 | 110,423 | 18,371 | 7,873 | 70,690 | 36,284 | 244,496 |
| 1998 | 1,093 | 141,101 | 27,921 | 10,181 | 93,135 | 40,221 | 313,652 |
| 1999 | 1,071 | 137,373 | 28,288 | 11,768 | 95,554 | 28,128 | 302,182 |
| 2000 | 1,334 | 141,763 | 23,335 | 11,246 | 96,234 | 28,672 | 302,584 |
| 2001 | 2,522 | 145,112 | 25,745 | 10,799 | 101,955 | 25,759 | 311,892 |
| 2002 | 1,173 | 162,321 | 25,042 | 10,686 | 92,986 | 47,597 | 339,805 |
| 2003 | 1,003 | 156,620 | 21,936 | 13,501 | 107,108 | 43,668 | 343,836 |
| 2004 | 980 | 83,483 | 20,026 | 14,635 | 54,675 | 19,425 | 193,224 |
| 2005 | 1,902 | 65,865 | 26,603 | 14,606 | 26,210 | 20,951 | 156,137 |
| 2006 | 2,610 | 188,134 | 51,290 | 20,534 | 100,458 | 42,175 | 405,201 |
| 2007 | 3,553 | 296,267 | 51,217 | 22,260 | 194,794 | 76,467 | 644,558 |
| 2008 | 4,583 | 424,743 | 71,404 | 26,917 | 183,271 | 206,411 | 917,329 |
| 2009 | 5,345 | 371,920 | 56,947 | 31,551 | 201,267 | 163,951 | 830,981 |
| 2010 | 5,169 | 296,375 | 58,875 | 33,059 | 189,449 | 136,335 | 719,262 |
| 2011 | 5,477 | 530,953 | 107,066 | 33,816 | 147,341 | 311,214 | 1,135,867 |
| 2012 | 7,886 | 484,928 | 149,762 | 52,490 | 170,561 | 219,700 | 1,085,327 |
| 2013 | 9,347 | 477,567 | 206,389 | 57,294 | 110,637 | 224,515 | 1,085,749 |
| 2014 | 22,380 | 591,388 | 262,342 | 107,921 | 138,204 | 248,109 | 1,370,344 |
| 2015 | 32,558 | 583,499 | 365,791 | 130,017 | 127,945 | 306,037 | 1,545,847 |
| 2016 | 49,985 | 1,066,812 | 571,840 | 133,911 | 152,264 | 555,397 | 2,530,209 |
| 2017 | 40,444 | 497,329 | 344,197 | 184,312 | 180,850 | 224,389 | 1,471,521 |
| 2018 | 21,580 | 545,700 | 355,114 | 128,324 | 169,258 | 318,387 | 1,538,363 |
| 2019 | 28,006 | 844,378 | 361,754 | 170,182 | 234,486 | 402,626 | 2,041,432 |

Source:  ATF's National Firearms Registration and Transfer Record (NFRTR).

[1] Data from 1990 - 1996 represent fiscal year.

[2] Firearms may be transferred to the U.S., State or local governments without the payment of a transfer tax. Further transfers of NFA firearms between licensees registered as importers, manufacturers, or dealers who have paid the special occupational tax are likewise exempt from transfer tax.

[3] Totals do not include ATF Form 5320.20 or ATF Form 10 because these do not relate to commercial transactions.



13



Exhibit 7b. National Firearms Act Forms Processed by Fiscal Year (2002 - 2019)

# Exhibit 8: National Firearms Act Registered Weapons by State (April 2020)

| State | Any Other Weapon[1] | Destructive Device[2] | Machinegun[3] | Silencer[4] | Short Barreled Rifle[5] | Short Barreled Shotgun[6] | Total |
|---|---|---|---|---|---|---|---|
| Alabama | 1,250 | 81,684 | 32,529 | 52,066 | 7,731 | 2,472 | 177,732 |
| Alaska | 336 | 5,912 | 1,718 | 11,287 | 2,705 | 1,497 | 23,455 |
| Arkansas | 661 | 60,632 | 5,664 | 30,804 | 4,627 | 1,253 | 103,641 |
| Arizona | 2,883 | 113,085 | 18,483 | 65,332 | 21,639 | 2,844 | 224,266 |
| California | 4,477 | 308,759 | 29,861 | 15,129 | 14,177 | 14,392 | 386,795 |
| Colorado | 1,063 | 52,502 | 7,520 | 51,615 | 11,383 | 1,998 | 126,081 |
| Connecticut | 982 | 14,100 | 39,888 | 15,174 | 4,050 | 1,084 | 75,278 |
| District of Columbia | 69 | 55,236 | 5,958 | 715 | 1,188 | 1,107 | 64,273 |
| Delaware | 41 | 3,527 | 537 | 405 | 420 | 635 | 5,565 |
| Florida | 3,980 | 256,059 | 47,130 | 136,251 | 43,543 | 10,115 | 497,078 |
| Georgia | 2,146 | 85,418 | 40,181 | 93,573 | 18,267 | 11,918 | 251,503 |
| Hawaii | 34 | 8,265 | 441 | 286 | 95 | 75 | 9,196 |
| Iowa | 907 | 17,697 | 8,804 | 15,939 | 2,127 | 1,139 | 46,613 |
| Idaho | 656 | 26,447 | 5,102 | 31,972 | 4,649 | 579 | 69,405 |
| Illinois | 1,032 | 109,537 | 30,492 | 3,203 | 4,213 | 1,735 | 150,212 |
| Indiana | 1,717 | 47,458 | 20,868 | 53,880 | 9,613 | 9,425 | 142,961 |
| Kansas | 740 | 25,404 | 3,876 | 24,358 | 5,214 | 1,191 | 60,783 |
| Kentucky | 1,158 | 34,708 | 17,903 | 37,590 | 5,886 | 2,060 | 99,305 |
| Louisiana | 642 | 58,249 | 7,188 | 51,398 | 7,997 | 1,960 | 127,434 |
| Massachusetts | 862 | 18,582 | 6,958 | 7,367 | 4,995 | 1,015 | 39,779 |
| Maryland | 1,098 | 60,140 | 29,586 | 25,466 | 6,578 | 3,899 | 126,767 |
| Maine | 592 | 3,700 | 5,152 | 5,989 | 2,731 | 531 | 18,695 |
| Michigan | 1,241 | 29,506 | 16,890 | 36,676 | 7,433 | 1,551 | 93,297 |
| Minnesota | 2,730 | 52,750 | 8,720 | 35,731 | 6,676 | 1,136 | 107,743 |
| Missouri | 1,502 | 36,839 | 10,160 | 38,500 | 8,972 | 2,855 | 98,828 |
| Mississippi | 514 | 28,692 | 4,699 | 29,331 | 4,745 | 1,053 | 69,034 |
| Montana | 454 | 4,795 | 2,422 | 17,001 | 2,218 | 577 | 27,467 |
| North Carolina | 1,029 | 103,068 | 15,779 | 58,432 | 14,547 | 3,382 | 196,237 |
| North Dakota | 208 | 3,565 | 1,626 | 16,934 | 1,727 | 305 | 24,365 |
| Nebraska | 787 | 7,889 | 2,356 | 19,026 | 3,099 | 878 | 34,035 |
| New Hampshire | 472 | 5,454 | 19,253 | 31,332 | 6,607 | 595 | 63,713 |
| New Jersey | 448 | 46,256 | 39,979 | 3,339 | 3,268 | 2,558 | 95,848 |
| New Mexico | 320 | 91,470 | 4,086 | 15,372 | 3,991 | 806 | 116,045 |
| Nevada | 1,384 | 43,546 | 16,385 | 29,828 | 10,885 | 2,970 | 104,998 |
| New York | 1,786 | 52,800 | 13,263 | 5,041 | 7,180 | 7,696 | 87,766 |
| Ohio | 2,028 | 89,228 | 21,870 | 54,649 | 13,253 | 6,450 | 187,478 |
| Oklahoma | 1,224 | 18,225 | 9,630 | 52,103 | 7,773 | 1,929 | 90,884 |
| Oregon | 1,651 | 26,158 | 6,653 | 38,843 | 8,201 | 1,635 | 83,141 |
| Pennsylvania | 2,443 | 197,382 | 20,626 | 66,260 | 17,433 | 13,714 | 317,858 |
| Rhode Island | 43 | 3,589 | 629 | 92 | 322 | 109 | 4,784 |
| South Carolina | 749 | 41,748 | 11,045 | 38,222 | 7,944 | 4,173 | 103,881 |
| South Dakota | 377 | 4,324 | 2,096 | 29,029 | 1,409 | 244 | 37,479 |
| Tennessee | 1,763 | 50,922 | 14,687 | 47,401 | 11,378 | 6,320 | 132,471 |
| Texas | 7,552 | 297,502 | 43,729 | 401,861 | 70,006 | 9,459 | 830,109 |
| Utah | 516 | 19,075 | 7,763 | 60,645 | 7,941 | 1,610 | 97,550 |
| Virginia | 3,024 | 241,180 | 42,761 | 71,688 | 23,482 | 8,811 | 390,946 |
| Vermont | 230 | 3,094 | 1,467 | 2,657 | 739 | 180 | 8,367 |
| Washington | 1,972 | 56,204 | 4,589 | 58,854 | 14,072 | 1,040 | 136,731 |
| Wisconsin | 820 | 34,560 | 8,292 | 31,075 | 7,089 | 1,400 | 83,236 |
| West Virginia | 474 | 21,997 | 7,309 | 11,198 | 2,582 | 1,179 | 44,739 |
| Wyoming | 325 | 121,151 | 1,940 | 11,781 | 1,732 | 417 | 137,346 |
| Other US Territories | 6 | 323 | 408 | 19 | 12 | 103 | 871 |
| Total | 65,398 | 3,180,393 | 726,951 | 2,042,719 | 460,544 | 158,059 | 6,634,064 |

Source: ATF National Firearms Registration and Transfer Record (NFRTR).

15

[1] The term "any other weapon" means any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive, a pistol or revolver having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell, weapons with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading, and shall include any such weapon which may be readily restored to fire. Such term shall not include a pistol or a revolver having a rifled bore, or rifled bores, or weapons designed, made, or intended to be fired from the shoulder and not capable of firing fixed ammunition.

[2] Destructive device generally is defined as (a) Any explosive, incendiary, or poison gas (1) bomb, (2) grenade, (3) rocket having a propellant charge of more than 4 ounces, (4) missile having an explosive or incendiary charge of more than one-quarter ounce, (5) mine, or (6) device similar to any of the devices described in the preceding paragraphs of this definition; (b) any type of weapon (other than a shotgun or a shotgun shell which the Director finds is generally recognized as particularly suitable for sporting purposes) by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter; and (c) any combination of parts either designed or intended for use in converting any device into any destructive device described in paragraph (a) or (b) of this section and from which a destructive device may be readily assembled. The term shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 4684(2), 4685, or 4686 of title 10, United States Code; or any other device which the Director finds is not likely to be used as a weapon, is an antique, or is a rifle which the owner intends to use solely for sporting, recreational, or cultural purposes.

[3] Machinegun is defined as any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

[4] Silencer is defined as any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for the use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication.

[5] Short-barreled rifle is defined as a rifle having one or more barrels less than 16 inches in length, and any weapon made from a rifle, whether by alteration, modification, or otherwise, if such weapon, as modified, has an overall length of less than 26 inches.

[6] Short-barreled shotgun is defined as a shotgun having one or more barrels less than 18 inches in length, and any weapon made from a shotgun, whether by alteration, modification, or otherwise, if such weapon as modified has an overall length of less than 26 inches.

**Exhibit 9. National Firearms Act Special Occupational Taxpayers by State Tax Year 2019**

| State | Importers | Manufacturers | Dealers | Total |
|---|---|---|---|---|
| Alabama | 26 | 105 | 142 | 273 |
| Alaska | 0 | 28 | 63 | 91 |
| Arizona | 34 | 380 | 250 | 664 |
| Arkansas | 17 | 118 | 121 | 256 |
| California | 12 | 109 | 91 | 212 |
| Colorado | 6 | 144 | 223 | 373 |
| Connecticut | 4 | 80 | 61 | 145 |
| Delaware | 0 | 0 | 2 | 2 |
| District of Columbia | 1 | 0 | 0 | 1 |
| Florida | 63 | 461 | 518 | 1042 |
| Georgia | 11 | 176 | 319 | 506 |
| Hawaii | 0 | 0 | 1 | 1 |
| Idaho | 1 | 108 | 112 | 221 |
| Illinois | 10 | 89 | 40 | 139 |
| Indiana | 3 | 89 | 243 | 335 |
| Iowa | 1 | 57 | 95 | 153 |
| Kansas | 3 | 63 | 136 | 202 |
| Kentucky | 15 | 80 | 189 | 284 |
| Louisiana | 2 | 75 | 171 | 248 |
| Maine | 3 | 40 | 50 | 93 |
| Maryland | 9 | 76 | 92 | 177 |
| Massachusetts | 2 | 100 | 24 | 126 |
| Michigan | 10 | 113 | 238 | 361 |
| Minnesota | 14 | 99 | 167 | 280 |
| Mississippi | 8 | 70 | 122 | 200 |
| Missouri | 18 | 149 | 205 | 372 |
| Montana | 4 | 64 | 94 | 162 |
| Nebraska | 0 | 34 | 83 | 117 |
| Nevada | 13 | 150 | 83 | 246 |
| New Hampshire | 6 | 88 | 69 | 163 |
| New Jersey | 1 | 9 | 18 | 28 |
| New Mexico | 12 | 69 | 77 | 158 |
| New York | 2 | 77 | 24 | 103 |
| North Carolina | 1 | 199 | 335 | 535 |
| North Dakota | 1 | 10 | 60 | 71 |
| Ohio | 4 | 213 | 316 | 533 |
| Oklahoma | 1 | 116 | 166 | 283 |
| Oregon | 1 | 107 | 152 | 260 |
| Pennsylvania | 19 | 193 | 310 | 522 |
| Rhode Island | 1 | 0 | 1 | 2 |
| South Carolina | 10 | 97 | 110 | 217 |
| South Dakota | 0 | 27 | 81 | 108 |
| Tennessee | 6 | 115 | 260 | 381 |
| Texas | 40 | 684 | 985 | 1709 |
| Utah | 3 | 141 | 110 | 254 |
| Vermont | 4 | 22 | 23 | 49 |
| Virginia | 49 | 184 | 301 | 534 |
| Washington | 6 | 124 | 125 | 255 |
| West Virginia | 9 | 42 | 85 | 136 |
| Wisconsin | 2 | 103 | 191 | 296 |
| Wyoming | 2 | 39 | 72 | 113 |
| Total | 470 | 5,716 | 7,806 | 13,992 |

Source: ATF's National Firearms Act Special Occupational Tax Database (NSOT)

Numbers represent qualified premises locations.

# Exhibit 10. Federal Firearms Licensees Total (1975-2019)

| Fiscal Year | Dealer | Pawn-broker | Collector | Manufacturer of Ammunition | Manufacturer of Firearms | Importer | Destructive Device Dealer | Destructive Device Manufacturer | Destructive Device Importer | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 1975 | 146,429 | 2,813 | 5,211 | 6,668 | 364 | 403 | 9 | 23 | 7 | 161,927 |
| 1976 | 150,767 | 2,882 | 4,036 | 7,181 | 397 | 403 | 4 | 19 | 8 | 165,697 |
| 1977 | 157,463 | 2,943 | 4,446 | 7,761 | 408 | 419 | 6 | 28 | 10 | 173,484 |
| 1978 | 152,681 | 3,113 | 4,629 | 7,735 | 422 | 417 | 6 | 35 | 14 | 169,052 |
| 1979 | 153,861 | 3,388 | 4,975 | 8,055 | 459 | 426 | 7 | 33 | 12 | 171,216 |
| 1980 | 155,690 | 3,608 | 5,481 | 8,856 | 496 | 430 | 7 | 40 | 11 | 174,619 |
| 1981 | 168,301 | 4,308 | 6,490 | 10,067 | 540 | 519 | 7 | 44 | 20 | 190,296 |
| 1982 | 184,840 | 5,002 | 8,602 | 12,033 | 675 | 676 | 12 | 54 | 24 | 211,918 |
| 1983 | 200,342 | 5,388 | 9,859 | 13,318 | 788 | 795 | 16 | 71 | 36 | 230,613 |
| 1984 | 195,847 | 5,140 | 8,643 | 11,270 | 710 | 704 | 15 | 74 | 40 | 222,443 |
| 1985 | 219,366 | 6,207 | 9,599 | 11,818 | 778 | 881 | 15 | 85 | 45 | 248,794 |
| 1986 | 235,393 | 6,998 | 10,639 | 12,095 | 843 | 1,035 | 16 | 95 | 52 | 267,166 |
| 1987 | 230,888 | 7,316 | 11,094 | 10,613 | 852 | 1,084 | 16 | 101 | 58 | 262,022 |
| 1988 | 239,637 | 8,261 | 12,638 | 10,169 | 926 | 1,123 | 18 | 112 | 69 | 272,953 |
| 1989 | 231,442 | 8,626 | 13,536 | 8,345 | 922 | 989 | 21 | 110 | 72 | 264,063 |
| 1990 | 235,684 | 9,029 | 14,287 | 7,945 | 978 | 946 | 20 | 117 | 73 | 269,079 |
| 1991 | 241,706 | 9,625 | 15,143 | 7,470 | 1,059 | 901 | 17 | 120 | 75 | 276,116 |
| 1992 | 248,155 | 10,452 | 15,820 | 7,412 | 1,165 | 894 | 15 | 127 | 77 | 284,117 |
| 1993 | 246,984 | 10,958 | 16,635 | 6,947 | 1,256 | 924 | 15 | 128 | 78 | 283,925 |
| 1994 | 213,734 | 10,872 | 17,690 | 6,068 | 1,302 | 963 | 12 | 122 | 70 | 250,833 |
| 1995 | 158,240 | 10,155 | 16,354 | 4,459 | 1,242 | 842 | 14 | 118 | 71 | 191,495 |
| 1996 | 105,398 | 9,974 | 14,966 | 3,144 | 1,327 | 786 | 12 | 117 | 70 | 135,794 |
| 1997 | 79,285 | 9,956 | 13,512 | 2,451 | 1,414 | 733 | 13 | 118 | 72 | 107,554 |
| 1998 | 75,619 | 10,176 | 14,875 | 2,374 | 1,546 | 741 | 12 | 125 | 68 | 105,536 |
| 1999 | 71,290 | 10,035 | 17,763 | 2,247 | 1,639 | 755 | 11 | 127 | 75 | 103,942 |
| 2000 | 67,479 | 9,737 | 21,100 | 2,112 | 1,773 | 748 | 12 | 125 | 71 | 103,157 |
| 2001 | 63,845 | 9,199 | 25,145 | 1,950 | 1,841 | 730 | 14 | 117 | 72 | 102,913 |
| 2002 | 59,829 | 8,770 | 30,157 | 1,763 | 1,941 | 735 | 16 | 126 | 74 | 103,411 |
| 2003 | 57,492 | 8,521 | 33,406 | 1,693 | 2,046 | 719 | 16 | 130 | 82 | 104,105 |
| 2004 | 56,103 | 8,180 | 37,206 | 1,625 | 2,144 | 720 | 16 | 136 | 84 | 106,214 |
| 2005 | 53,833 | 7,809 | 40,073 | 1,502 | 2,272 | 696 | 15 | 145 | 87 | 106,432 |
| 2006 | 51,462 | 7,386 | 43,650 | 1,431 | 2,411 | 690 | 17 | 170 | 99 | 107,316 |
| 2007 | 49,221 | 6,966 | 47,690 | 1,399 | 2,668 | 686 | 23 | 174 | 106 | 108,933 |
| 2008 | 48,261 | 6,687 | 52,597 | 1,420 | 2,959 | 688 | 29 | 189 | 113 | 112,943 |
| 2009 | 47,509 | 6,675 | 55,046 | 1,511 | 3,543 | 735 | 34 | 215 | 127 | 115,395 |
| 2010 | 47,664 | 6,895 | 56,680 | 1,759 | 4,293 | 768 | 40 | 243 | 145 | 118,487 |
| 2011 | 48,676 | 7,075 | 59,227 | 1,895 | 5,441 | 811 | 42 | 259 | 161 | 123,587 |
| 2012 | 50,848 | 7,426 | 61,885 | 2,044 | 7,423 | 848 | 52 | 261 | 169 | 130,956 |
| 2013 | 54,026 | 7,810 | 64,449 | 2,353 | 9,094 | 998 | 57 | 273 | 184 | 139,244 |
| 2014 | 55,431 | 8,132 | 63,301 | 2,596 | 9,970 | 1,133 | 66 | 287 | 200 | 141,116 |
| 2015 | 56,181 | 8,152 | 60,652 | 2,603 | 10,498 | 1,152 | 66 | 315 | 221 | 139,840 |
| 2016 | 56,754 | 8,076 | 57,345 | 2,481 | 11,083 | 1,105 | 71 | 332 | 217 | 137,464 |
| 2017 | 56,638 | 7,871 | 55,588 | 2,259 | 11,946 | 1,110 | 78 | 357 | 234 | 136,081 |
| 2018 | 55,891 | 7,639 | 54,136 | 2,119 | 12,564 | 1,127 | 98 | 378 | 239 | 134,191 |
| 2019 | 53,924 | 7,341 | 52,446 | 1,910 | 13,044 | 1,109 | 129 | 391 | 252 | 130,546 |

Source: ATF Federal Firearms Licensing Center, Federal Licensing System (FLS). Data is based on active firearms licenses and related statistics as of the end of each fiscal year.

App. 73

## Exhibit 11.  Federal Firearms Licensees by State 2019

| State | FFL Population |
|---|---|
| Alabama | 2,153 |
| Alaska | 848 |
| Arizona | 3,199 |
| Arkansas | 1,877 |
| California | 8,127 |
| Colorado | 2,933 |
| Connecticut | 1,760 |
| Delaware | 304 |
| District of Columbia | 30 |
| Florida | 6,936 |
| Georgia | 3,442 |
| Hawaii | 229 |
| Idaho | 1,467 |
| Illinois | 4,862 |
| Indiana | 2,754 |
| Iowa | 2,017 |
| Kansas | 1,757 |
| Kentucky | 2,246 |
| Louisiana | 1,986 |
| Maine | 888 |
| Maryland | 2,925 |
| Massachusetts | 4,006 |
| Michigan | 3,870 |
| Minnesota | 2,443 |
| Mississippi | 1,469 |
| Missouri | 4,362 |
| Montana | 1,487 |
| Nebraska | 1,120 |
| Nevada | 1,293 |
| New Hampshire | 1,161 |
| New Jersey | 482 |
| New Mexico | 1,042 |
| New York | 3,791 |
| North Carolina | 4,438 |
| North Dakota | 688 |
| Ohio | 4,434 |
| Oklahoma | 2,246 |
| Oregon | 2,183 |
| Pennsylvania | 6,106 |
| Rhode Island | 601 |
| South Carolina | 2,077 |
| South Dakota | 761 |
| Tennessee | 3,103 |
| Texas | 10,492 |
| Utah | 1,454 |
| Vermont | 527 |
| Virginia | 3,932 |
| Washington | 3,013 |
| West Virginia | 1,360 |
| Wisconsin | 2,894 |
| Wyoming | 854 |
| Other Territories | 117 |
| Total | 130,546 |

Source:  ATF, Federal Firearms Licensing Center, Firearms Licensing System.  Data is based on active firearms licenses and related statistics as of the end of the fiscal year.

App. 74

# Exhibit 12.  Actions on Federal Firearms License Applications
## (1975 - 2019)

| Fiscal Year | Original Application Processed | Denied | Withdrawn[1] | Abandoned[2] |
|---|---|---|---|---|
| 1975 | 29,183 | 150 | 1,651 | ... |
| 1976 | 29,511 | 209 | 2,077 | ... |
| 1977 | 32,560 | 216 | 1,645 | ... |
| 1978 | 29,531 | 151 | 1,015 | 414 |
| 1979 | 32,678 | 124 | 432 | 433 |
| 1980 | 36,052 | 96 | 601 | 661 |
| 1981 | 41,798 | 85 | 742 | 329 |
| 1982 | 44,745 | 52 | 580 | 370 |
| 1983 | 49,669 | 151 | 916 | 649 |
| 1984 | 39,321 | 98 | 706 | 833 |
| 1985 | 37,385 | 103 | 666 | 598 |
| 1986 | 42,842 | 299 | 698 | 452 |
| 1987 | 36,835 | 121 | 874 | 458 |
| 1988 | 32,724 | 30 | 506 | 315 |
| 1989 | 34,318 | 34 | 561 | 360 |
| 1990 | 34,336 | 46 | 893 | 404 |
| 1991 | 34,567 | 37 | 1,059 | 685 |
| 1992 | 37,085 | 57 | 1,337 | 611 |
| 1993 | 41,545 | 343 | 6,030 | 1,844 |
| 1994 | 25,393 | 136 | 4,480 | 3,917 |
| 1995 | 7,777 | 49 | 1,046 | 1,180 |
| 1996 | 8,461 | 58 | 1,061 | 629 |
| 1997 | 7,039 | 24 | 692 | 366 |
| 1998 | 7,090 | 19 | 621 | 352 |
| 1999 | 8,581 | 23 | 48 | 298 |
| 2000 | 10,698 | 6 | 447 | 91 |
| 2001 | 11,161 | 3 | 403 | 114 |
| 2002 | 16,100 | 13 | 468 | 175 |
| 2003 | 13,884 | 30 | 729 | 289 |
| 2004 | 12,953 | 18 | 572 | 235 |
| 2005 | 13,326 | 33 | 943 | 300 |
| 2006 | 13,757 | 35 | 898 | 234 |
| 2007 | 14,123 | 32 | 953 | 402 |
| 2008 | 15,434 | 21 | 1,030 | 291 |
| 2009 | 16,105 | 20 | 1,415 | 724 |
| 2010 | 16,930 | 32 | 1,467 | 380 |
| 2011 | 19,923 | 22 | 1,744 | 369 |
| 2012 | 20,977 | 28 | 2,252 | 358 |
| 2013 | 23,242 | 30 | 2,901 | 385 |
| 2014 | 17,816 | 27 | 2,192 | 444 |
| 2015 | 15,219 | 34 | 1,953 | 387 |
| 2016 | 15,853 | 16 | 2,165 | 307 |
| 2017 | 14,546 | 17 | 2,038 | 366 |
| 2018 | 14,054 | 17 | 1,913 | 377 |
| 2019 | 12,966 | 9 | 1,933 | 382 |

Source:  ATF

[1]An application can be withdrawn by an applicant at any time prior to the issuance of a license.

[2]If ATF cannot locate an applicant during an attempted application inspection or cannot obtain needed verification data, then the application will be abandoned.

# Exhibit 13. Federal Firearms Licensees and Compliance Inspections (FY 1975-2019)

| Fiscal Year | Inspections | Total Licensees | Percent Inspected | Licensed Business Entities[1] | Percent Inspected |
|---|---|---|---|---|---|
| 1975 | 10,944 | 161,927 | 6.7% | 156,716 | 7.0% |
| 1976 | 15,171 | 165,697 | 9.1% | 161,661 | 9.4% |
| 1977 | 19,741 | 173,484 | 11.3% | 169,038 | 11.7% |
| 1978 | 22,130 | 169,052 | 13.1% | 164,423 | 13.5% |
| 1979 | 14,744 | 171,216 | 8.6% | 166,241 | 8.9% |
| 1980 | 11,515 | 174,619 | 6.5% | 169,138 | 6.8% |
| 1981 | 11,035 | 190,296 | 5.7% | 183,806 | 6.0% |
| 1982 | 1,829 | 211,918 | 0.8% | 203,316 | 0.9% |
| 1983 | 2,662 | 230,613 | 1.1% | 220,754 | 1.2% |
| 1984 | 8,861 | 222,443 | 3.9% | 213,800 | 4.1% |
| 1985 | 9,527 | 248,794 | 3.8% | 239,195 | 4.0% |
| 1986 | 8,605 | 267,166 | 3.2% | 256,527 | 3.4% |
| 1987 | 8,049 | 262,022 | 3.1% | 250,928 | 3.2% |
| 1988 | 9,283 | 272,953 | 3.4% | 260,315 | 3.6% |
| 1989 | 7,142 | 264,063 | 2.7% | 250,527 | 2.9% |
| 1990 | 8,471 | 269,079 | 3.1% | 254,792 | 3.3% |
| 1991 | 8,258 | 276,116 | 3.0% | 260,973 | 3.2% |
| 1992 | 16,328 | 284,117 | 5.7% | 268,297 | 6.1% |
| 1993 | 22,330 | 283,925 | 7.9% | 267,290 | 8.4% |
| 1994 | 20,067 | 250,833 | 8.0% | 233,143 | 8.6% |
| 1995 | 13,141 | 191,495 | 7.0% | 171,577 | 7.7% |
| 1996 | 10,051 | 135,794 | 7.4% | 120,828 | 8.3% |
| 1997 | 5,925 | 107,554 | 5.5% | 94,042 | 6.3% |
| 1998 | 5,043 | 105,536 | 4.8% | 90,661 | 5.6% |
| 1999 | 9,004 | 103,942 | 8.7% | 86,179 | 10.4% |
| 2000 | 3,640 | 103,157 | 3.5% | 82,558 | 4.4% |
| 2001 | 3,677 | 102,913 | 3.6% | 77,768 | 4.7% |
| 2002 | 5,467 | 103,411 | 5.2% | 73,254 | 7.5% |
| 2003 | 5,170 | 104,105 | 4.9% | 70,699 | 7.3% |
| 2004 | 4,509 | 106,214 | 4.2% | 69,008 | 6.5% |
| 2005 | 5,189 | 106,432 | 4.9% | 66,359 | 7.8% |
| 2006 | 7,294 | 107,316 | 6.8% | 63,666 | 11.5% |
| 2007 | 10,141 | 108,933 | 9.3% | 61,243 | 16.6% |
| 2008 | 11,100 | 112,943 | 9.8% | 60,346 | 18.4% |
| 2009 | 11,375 | 115,395 | 9.9% | 60,349 | 18.8% |
| 2010 | 10,538 | 118,487 | 8.9% | 61,807 | 17.0% |
| 2011 | 13,159 | 123,587 | 10.6% | 64,360 | 20.4% |
| 2012 | 11,420 | 130,956 | 8.7% | 69,071 | 16.5% |
| 2013 | 10,516 | 139,244 | 7.6% | 74,795 | 14.1% |
| 2014 | 10,437 | 141,116 | 7.4% | 77,815 | 13.4% |
| 2015 | 8,696 | 139,840 | 6.3% | 79,188 | 11.0% |
| 2016 | 9,790 | 137,464 | 7.1% | 80,119 | 12.2% |
| 2017 | 11,009 | 136,081 | 8.1% | 80,493 | 13.7% |
| 2018 | 10,323 | 134,191 | 7.7% | 80,055 | 12.9% |
| 2019 | 13,079 | 130,546 | 10.0% | 78,100 | 16.7% |

Source: ATF

[1] Does not include Collector of Curio and Relics (Type 03)