IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| TEXAS GUN RIGHTS, INC., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, <br><br> *Defendant*. | Civil Action No. 4:23-cv-578-O |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF**

Plaintiffs concede that their "claims in this case . . . are different" from the logical-outgrowth claim found likely to succeed in *Mock v. Garland*, 75 F.4th 563 (5th Cir. 2023). *See* Pls.' Supp. Br. at 4, ECF No. 33. The parties thus agree that *Mock* is not controlling here. The remaining contentions in Plaintiffs' supplemental brief, however, are entirely lacking in support.

*Interpretive and Legislative Rules.* Relying on the Fifth Circuit's determination that the Final Rule is not an "interpretive rule" under the APA, Plaintiffs argue that the Rule does not "simply interpret[]" the statutory definition of "rifle" but rather re-defines it. Pls.' Supp. Br. at 1-2. This is a non sequitur. As the D.C. Circuit explained, the distinction between "legislative" and "interpretive" rules is not meant to convey "that only interpretive rules interpret." *Cent. Tex. Tel. Coop., Inc. v. FCC*, 402 F.3d 205, 212 (D.C. Cir. 2005).

Indeed, "[t]he APA's definition of 'rule' contemplates that all types of rules, legislative and interpretive alike, may interpret 'law.'" *Id.* And at bottom, whether the Final Rule is legislative or interpretive does not bear on "the substantive validity of [ATF's] interpretation." *See Am. Mining Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1113 (D.C. Cir. 1993).

1

*Arbitrary and Capricious.* Plaintiffs also argue that ATF described the Final Rule as interpretive "because of its desire to evade notice-and-comment." Pls.' Supp. Br. at 2. This contention is bewildering; the Final Rule was subject to an extensive notice-and-comment process, whereby ATF reviewed some 230,000 comments and responded at length in the 98-page Final Rule.

Similarly, Plaintiffs are wrong to suggest that by calling the Final Rule interpretive, ATF somehow "failed to fully acknowledge the substantive changes they were making." *Id.* at 3. The introductory summary to the Final Rule could hardly be clearer: ATF amended its regulations to state that a "rifle," as defined under the NFA and GCA, can "include a weapon that is equipped with . . . a 'stabilizing brace,'" provided certain factors are met. *Factoring Criteria for Firearms With Attached "Stabilizing Braces,"* 88 Fed. Reg. 6478, 6478 (Jan. 31, 2023). So contrary to Plaintiffs' argument, the Final Rule's purpose and effect were neither "hidden in the shadows" nor "obscured from the public." Pls.' Supp. Br. at 3; *see also* 88 Fed. Reg. at 6480 (stating that the Final Rule amends regulations to "expressly state" that a "rifle" may include a weapon equipped with a "stabilizing brace"); *id.* at 6502 ("The Department acknowledges that this rule is a change in position from some of ATF's previous classifications or positions[.]").

*Second Amendment.* Plaintiffs finally ask this Court to rely upon Judge Willett's concurrence in evaluating Plaintiffs' Second Amendment claim. As an initial matter, Plaintiffs do not suggest (nor could they) that a "one-judge opinion," that reaches conclusions beyond the majority's holding is binding on the Court. *See Rust v. Bank of Am., N.A.*, 573 F. App'x 343, 347 (5th Cir. 2014) (explaining that a "one-judge opinion, concurring in the majority's judgment but disagreeing with some of its reasoning, is not binding").

Moreover, and respectfully, Judge Willett's views as to the Second Amendment lack support. He primarily contends that ATF may not regulate "attachments that convert a pistol into a rifle." *Mock*, 75 F.4th at 588 (Willett, J., concurring). But as Defendant previously explained, the Second

Amendment protects the use of arms, not attachments or accessories for arms. Def.'s Opp'n to Pls.' Mot. for Prelim. Inj. ("Def.'s Opp'n") at 23-24, ECF No. 27. Indeed, courts have uniformly held that "[s]ilencers are firearms accessories and not 'arms' for purposes of Second Amendment [p]rotection." *Cox v. United States*, No. CR 11-00022RJB, 2023 WL 4203261, at *7 (D. Alaska June 27, 2023) (collecting cases). And silencers remain accessories, despite claims that they may "increas[e] the accuracy of a firearm because their weight prevents muzzle rise." *See United States v. Hasson*, No. GJH-19-96, 2019 WL 4573424, at *2 (D. Md. Sept. 20, 2019), *aff'd,* 26 F.4th 610 (4th Cir. 2022); *United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018) (holding no Second Amendment right to use silencers despite claims that silencers "can improve accuracy" by "reducing muzzle flinch and the disorientation that can follow a loud shot") (citation omitted). The same reasoning necessarily follows for stabilizing braces, a similarly optional "attachment" or "accessory" for firearms. *See Miller v. Garland*, --- F. Supp. 3d ---, 2023 WL 3692841, at *10 (E.D. Va. May 26, 2023) (finding Final Rule did not implicate Second Amendment because "a stabilizing brace cannot cause harm on its own, is not useful independent of its attachment to a firearm, and a firearm remains an effective weapon without a brace"). Thus, even accepting Judge Willett's framing that the Final Rule affects the use of firearm accessories, such a regulation does not implicate the Second Amendment.

Judge Willett further argues that the government may not impose controls on the "use [of] accessories that make an otherwise lawful weapon *safer*," by improving accuracy. *Mock*, 75 F.4th at 588 (Willett, J. concurring). But as the agency found, such accessories may make weapons more dangerous. Where stabilizing braces are functionally equivalent to shoulder stocks, adding a brace enables a user to shoulder-mount a weapon to better direct and sustain fire. 88 Fed. Reg. at 6499 (noting that short-barreled rifles are dangerous and unusual in part because of "the ability to shoulder the firearm for better accuracy"). Add to that the "concealability" of the weapon, and you

3

have firearms that can be used readily and efficiently by criminals, as evidenced by their use in mass shootings. *Id.* ("The compact size of these firearms also assists with concealability of a firearm with a large destructive power."). These weapons are made more lethal, not safer. *Mock*, 75 F.4th at 596 (Higginson, J., dissenting).

Moreover, Judge Willett does not discuss two other independent reasons the Final Rule does not infringe the Second Amendment, both of which are addressed in Judge Higginson's dissent. First, Judge Higginson explained that because short-barreled rifles are "uniquely dangerous weapons," and because they are "constitutionally regulated under the NFA" the Final Rule does not run afoul of the Second Amendment simply by "identif[ying] criteria for classifying materially indistinguishable [arms] alike." *Mock*, 75 F.4th at 596 (Higginson, J., dissenting); *see also* Def.'s Opp'n at 26-28 (explaining why short-barreled rifles are unprotected dangerous and unusual weapons). Second, Judge Higginson reiterated that the Final Rule "does not ban anything," and merely flows from the NFA, "a registration law, akin to a licensing regime." *Mock*, 75 F.4th at 596-97 (Higginson, J., dissenting). Judge Higginson correctly concluded that Plaintiffs had "failed to demonstrate" that the NFA's "century-old registration scheme" infringes on Second Amendment rights. *Id.* at 597 (Higginson, J., dissenting). This Court agreed with the latter point in *Mock*, explaining that the Second Amendment does not "bar the imposition of traditional registration and licensing requirements commonly associated with firearm ownership." *Mock v. Garland*, --- F. Supp. 3d ---, 2023 WL 2711630, at *7 (N.D. Tex. Mar. 30, 2023). That conclusion was not disturbed on appeal, and the Court should hold similarly here.

As a final point, even if the Final Rule somehow implicates the text of the Second Amendment, Judge Willett was wrong to suggest that ATF must provide a "historical tradition" specifically of Government approval processes and regulations for the use of certain firearm "accessories." *Mock*, 75 F.4th at 588 (Willett, J., concurring). Such a requirement runs counter to

4

*Bruen*'s admonition that the Government need not identify "a historical *twin*" to justify a modern regulation, else the Second Amendment become a "regulatory straightjacket." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2133 (2022). Rather, the Government need only point to a historical analog to justify a regulation that implicates the Second Amendment. *Id.* And here, ATF pointed to several. For instance, to the extent Plaintiffs' complaint is with NFA registration and taxation, ATF pointed to numerous colonial and early state survey and inspection schemes that similarly collected information on private arms in a jurisdiction, Def.'s Opp'n at 29-30, as well as several examples of historical taxes levied on pistols and other types of firearms. *Id.* at 31. Therefore, the NFA and corresponding Final Rule are "analogous enough" to these historical examples "to pass constitutional muster." *Bruen*, 142 S. Ct. at 2133.

      This Court should accordingly deny Plaintiffs' Motion for a Preliminary Injunction for the reasons set forth in Defendant's Opposition.

Dated: September 5, 2023      Respectfully submitted,

      BRIAN M. BOYNTON
      Principal Deputy Assistant Attorney General

      BRIGHAM J. BOWEN
      Assistant Branch Director

      */s/ Michael Drezner*
      MICHAEL DREZNER (VA Bar No. 83836)
      JODY D. LOWENSTEIN (MT Bar No. 55816869)
      TAYLOR PITZ (CA Bar No. 332080)
      Trial Attorneys
      U.S. Department of Justice
      Civil Division, Federal Programs Branch
      1100 L Street NW
      Washington, DC 20005
      Phone: (202) 514-4505
      Email: Michael.L.Drezner@usdoj.gov

      *Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

On September 5, 2023, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Michael Drezner*
MICHAEL DREZNER
Trial Attorney
U.S. Department of Justice