## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| TEXAS GUN RIGHTS, INC and NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., | § § § § | |
| Plaintiffs, | § § | Civil Action No. 4:23-cv-00578-O |
| v. | § § | |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, | § § § | |
| Defendant. | § | |

## ORDER

Before the Court are Plaintiffs' Motion for Preliminary Injunction that would prohibit Defendant from implementing and enforcing the "Factoring Criteria for Firearms with Attached 'Stabilizing Braces'" (ECF No. 10) and Brief in Support (ECF No. 11), filed June 15, 2023; Defendant's Opposition (ECF No. 27), filed July 17, 2023; Plaintiffs' Reply (ECF No. 28), filed July 28, 2023; Defendant's Supplemental Brief (ECF No. 32), filed August 30, 2023; Plaintiffs' Supplemental Brief (ECF No. 33), filed August 30, 2023; and Defendant's Supplemental Response (ECF. No. 34), filed September 5, 2023. Having considered the parties' briefing and applicable law, the Court **GRANTS** Plaintiffs' motion for preliminary injunction against the Defendant.

I.      **BACKGROUND**[1]

    A.  **The Final Rule**

The possession, manufacture, and distribution of short-barreled rifles has been regulated by Congress for nearly a century. If a rifle has a barrel shorter than sixteen inches in length, it is a short-barreled rifle under the National Firearms Act ("NFA")[2] and the Gun Control Act ("GCA")[3] A pistol does not qualify as a rifle under the NFA or the GCA.

The first stabilizing brace was submitted to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") in 2012. At that time, the ATF concluded that the submitted brace "was not a shoulder stock and therefore could be attached to a firearm without constituting the making of an NFA firearm."[4] A stabilizing brace is an accessory that can be installed on a pistol. The brace attaches to the user's forearm to stabilize the pistol against the user's arm.

With time, the devices began to include characteristics resembling shoulder stocks and the ATF soon learned that manufacturers were widely marketing these "braces" to consumers as a means of creating functional short-barreled rifles without complying with NFA requirements.[5] In response to this trend, the ATF changed its position on stabilizing braces in 2021 when it issued a proposed rule ("Proposed Rule") indicating that the agency would begin classifying firearms with a stabilizing brace as either a pistol or a rifle. In 2023, the ATF published a final rule ("Final Rule"). The Plaintiffs now sue for injunctive relief, alleging various statutory and constitutional deficiencies with the Final Rule.

---

[1] Unless otherwise indicated, the recitation of background facts are taken from Plaintiffs' Complaint (ECF No. 1), Plaintiffs' Motion for Preliminary Injunction and Brief in Support (ECF Nos. 10, 11), and Plaintiffs' Reply in Support of Motion for Preliminary Injunction (ECF No. 28).

[2] 26 U.S.C. §§ 5801 *et seq.*

[3] 18 U.S.C. §§ 921 *et seq.*

[4] Letter for Mark Barnes, Outside Counsel to SB Tactical, LLC from Marvin G. Richardson, Assistant Director, Enforcement Programs and Services, ATF, 90000:GM, 5000 (Mar. 21, 2017), App'x to Pls.' Mot. for Prelim. Inj. 14–16, ECF. No. 12.

[5] Def.'s Opp. to Mot. for Prelim. Inj. 1,4, ECF No. 27.

**B. The Parties**

Plaintiffs Texas Gun Rights, Inc. ("TGR") and National Association for Gun Rights, Inc ("NAGR") sued the ATF on behalf of individual members Justin Maloney and Tyler Witzke ("Individual Members"). Maloney and Witzke cannot purchase stabilizing braces because they do not want to register them under the Final Rule. TGR is a nonprofit organization that exists to defend the right to bear arms and other individual liberties. TGR has members throughout the State of Texas. Individual Member Justin Maloney is a member of TGR. NAGR is a nonprofit organization likewise dedicated to protecting the right to bear arms. NAGR represents the interests of its members who are directly harmed by the Final Rule. Individual Member Tyler Witzke is a member of NAGR.

## II.    LEGAL STANDING

### A. Preliminary Injunctions

To obtain a preliminary injunction, the movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in the movant's favor; and (4) that issuance of a preliminary injunction will not disserve the public interest. *Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). The last two factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). As movant, the party seeking relief bears the burden of proving all elements of the preliminary injunction. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). And while the decision to grant or deny injunctive relief is committed to the district court's discretion, such relief is considered an "extraordinary remedy," never awarded as of right. *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)

(explaining that a court must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction").

## III.   ANALYSIS

### A.  Associational Standing

Because Plaintiffs seek a preliminary injunction on behalf of their members, they must establish associational standing. As a preliminary defense, Defendant argues that the preliminary injunction must be denied because the Plaintiffs' lack associational standing.[6] The associational standing doctrine permits a traditional membership organization "to invoke the court's [injunctive or declaratory] remedial powers on behalf of its members." *Warth v. Seldin*, 422 U.S. 490, 515 (1975). To do so, the organization must satisfy a three-prong *Hunt* test by showing that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2157 (2023) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

Here, the Plaintiffs satisfy the three-prong *Hunt* test. First, TGR and NAGR both seek relief on behalf of their members, including Justin Maloney and Tyler Witzke, who have standing to sue because they cannot purchase stabilizing braces without registering their firearms under the Final Rule.[7] It is well established that a plaintiff does not need to "expose himself to liability before bringing suit." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007). "The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction." *Id.* at

---

[6] Def.'s Opp. to Mot. for Prelim. Inj. 11–12, ECF No. 27.
[7] Pls.' Reply in Support of Mot. for Prelim. Inj. 1, ECF No. 28.

129. Thus, each Individual Member's decision to not purchase stabilizing braces establishes standing to sue in their own right, satisfying prong one of the *Hunt* test.

Second, TGR and NAGR's shared organizational purposes of preserving and protecting the right to keep are bear arms are clearly germane to this suit challenging Defendant's asserted authority to regulate pistol braces.[8] Third, because TGR and NAGR seek the equitable remedies of injunctive and declaratory relief from the Final Rule, there is no need for all of their individual members to participate in the lawsuit.

In sum, the Court holds that TGR and NAGR have demonstrated associational standing and may pursue relief on behalf of their members.

## B. Preliminary Injunction

Plaintiffs attack the Final Rule on several grounds: (1) that it violates the Second Amendment; (2) that it violates the separation of powers and nondelegation doctrine; (3) that it conflicts with the federal definition of rifle; (4) that it violates the Administrative Procedure Act ("APA") as it is arbitrary and capricious; and (5) that it violates the APA because it is void for vagueness. Because it is arguably the most important element for injunctive relief, *Tesfamichael v. Gonzales*, 411 F.3d 169, 176 (5th Cir. 2005), the Court addresses first whether any of Plaintiffs' claims are substantially likely to succeed on the merits.

### i. Success on the Merits

Plaintiffs are substantially likely to succeed on the merits because the Final Rule is arbitrary and capricious. Section 706 of the APA provides that reviewing courts must set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Arbitrary and capricious review focuses on

---

[8] Pls.' Compl. 2, ECF No. 1.

whether an agency articulated a rational connection between the facts found and the decision made." *ExxonMobil Pipeline Co. v. U.S. Dep't of Transp.*, 867 F.3d 564, 571 (5th Cir. 2017) (internal quotation marks and citation omitted). An agency must provide a more "detailed justification" for a "new policy [that] rests upon factual findings that contradict those which underlay its prior policy; or when its prior policy has engendered serious reliance interests that must be taken into account." *FCC v. Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009) (citing *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 742 (1996)).

Here, the ATF did not provide a detailed justification for their reversal of the agency's longstanding position. For close to a decade, the ATF concluded that "attaching the brace to a firearm does not alter the classification of the firearm or subject the firearm to NFA control."[9] The ATF changed course on this position for the first time in 2023, when it issued the Final Rule reversing the agency's otherwise long-standing policy.[10] "When an agency changes course, as [the ATF] did here, it must 'be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020) (quoting *Encino Motorcars, LLC v. Navarro,* 579 U. S. 211, 222 (2016)). "It would be arbitrary and capricious to ignore such matters" *Id.* But this is exactly what the ATF did when it inexplicably and fundamentally switched its position on stabilizing braces without providing sufficient explanations and notice.

---

[9] Max M. Kingery, ATF, Open Letter on the Redesign of "Stabilizing Braces" (Jan. 16, 2015), App'x to Pls.' Mot. for Prelim. Inj. 12, ECF. No. 12.

[10] Pls.' Br. in Support of Mot. for Prelim. Inj. 6, ECF No. 11.

Under the Final Rule, the ATF estimated about 99% of pistols with stabilizing braces would be reclassified as NFA rifles.[11] The ATF contemporaneously issued approximately sixty adjudications pursuant to the Final Rule that reclassified different configurations of firearms with stabilizing braces as NFA rifles.[12] The ATF provided no explanations for how the agency came to these classifications and there is no "meaningful clarity about what constitutes an impermissible stabilizing brace." *Mock v. Garland*, 75 F.4th 563, 585 (5th Cir. 2023). In fact, the Fifth Circuit "[could not] find a single given example of a pistol with a stabilizing brace that would constitute an NFA-exempt braced pistol." *Id.* at 575. Such "'unexplained' and 'inconsistent' positions" are arbitrary and capricious. *R.J. Reynolds Vapor Co. v. FDA*, 65 F.4th 182, 191 (5th Cir. 2023) (quoting *Encino Motorcars*, 579 U.S. at 222).

The ATF's disregard for the principles of fair notice and consideration of reliance interests is further exacerbated by its failure to follow the APA's procedural requirements for public notice and comment. Last month, the Fifth Circuit held that the ATF failed to follow proper notice-and-comment procedures because that Proposed Rule and the Final Rule differed in immense ways. *See Mock*, 75 F.4th at 585–86. This "monumental error" did not provide each Plaintiff with proper notice "that his [or her] firearm is subject to criminal penalties" or an opportunity to comment on the Final Rule. *Id.* at 586. The ATF's decision to skirt notice-and-comment provisions is arbitrary and capricious *per se*, and the specific type of conduct that the

---

[11] *Mock*, 75 F.4th at 574, 574 n.23 (citing ATF, RIN 1140-AA55, Factoring Criteria for Firearms with Attached "Stabilizing Braces": Final Regulatory Impact Analysis and Final Regulatory Flexibility Analysis 21 (2023), https://www.atf.gov/rules-and regulations/docs/undefined/atf2021r08stabilizingbracefrriapdf/download).

[12] *Id.* at 575, 575 n.24 (citing ATF, Common Weapon Platforms with Attached 'Stabilizing Brace' Designs That Are Short-Barreled Rifles (2023), https://www.atf.gov/rules-and-regulations/docs/undefined/bracefinalruleguidance-noncommercial/download; ATF, Commercially Available Firearms Equipped with a 'Stabilizing Brace' That Are Short-Barreled Rifles (2023), https://www.atf.gov/rules-and-regulations/docs/undefined/bracefinalruleguidancecommerciallypdf/download).

APA provides recourse for. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 94 (noting "the APA already provides recourse to regulated entities from agency decisions that skirt notice-and-comment provisions by placing a variety of constraints on agency decision-making, *e.g.*, the arbitrary and capricious standard"); *see also Mock*, 75 F.4th at 579 n.38 (stating "the [Final] Rule could have still been . . . challenged as arbitrary and capricious . . . , [because] [a]s the Supreme Court made clear in *Perez*, the public is not without recourse even if an agency attempts to 'skirt' the strictures of notice and comment with an interpretive rule").

For the reasons stated above, the Court holds at this stage that the Final Rule is arbitrary and capricious. Plaintiffs are likely to succeed on the merits, and thus, carried part of their burden for a preliminary injunction.

### ii. The Remaining Elements for a Preliminary Injunction

The parties and the Court are aware of at least three other cases in the Northern District of Texas that involve similarly situated plaintiffs (*i.e.*, handgun users, nonprofit organizations, and/or firearm manufacturers) challenging the Final Rule. One such case is *Mock v. Garland*, No. 4:23-cv-00095-O (N.D. Tex. Oct. 2, 2023) (order granting preliminary injunction). On October 2, 2023, this Court issued a preliminary injunction upon finding that the plaintiffs satisfied their burden of establishing irreparable harm and that the balance of equities and public interest supported injunctive relief. *Id.* For the reasons set forth in *Mock*, the Court finds that Plaintiffs here are entitled to identical relief.

In the absence of the Court's intervening relief, Plaintiffs' members are substantially threatened with irreparable harm in the form of "'nonrecoverable costs of complying with a putatively invalid regulation,'" *id.* at 14–16 (quoting *Rest. L. Ctr. v. United States Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023)), and Second Amendment rights that are "'either threatened or

in fact being impaired,'" *id.* at 16–25 (quoting *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)), neither of which can be adequately remedied at law. With the balance of equities and public interest merged into one, *Nken v. Holder*, 556 U.S. 418, 435 (2009), neither [the ATF] nor the public has any interest in enforcing a [Final Rule] that violates federal law." *Id.* at 34–35 (quoting *All. for Hippocratic Med. v. FDA*, 78 F.4th 210, 251 (5th Cir. 2023)).

## IV.   CONCLUSION

Having considered the arguments, evidence, and applicable law, the Court holds that the relevant factors weigh in favor of granting preliminary injunctive relief to Plaintiffs TGR and NAGR.

For the foregoing reasons, the Court **GRANTS** the Motion for Preliminary Injunction.

Accordingly, the Court **ORDERS** that the Defendant and each of their respective officers, agents, servants, and employees—are hereby:

1) **ENJOINED** from implementing and/or enforcing against Texas Gun Rights, Inc. and all of its members the provisions in 27 C.F.R. §§ 478.11 and 479.11 that the Court has preliminarily determined are unlawful and that the United States Court of Appeals for the Fifth Circuit has determined are unlawful;

2) **ENJOINED** from implementing and/or enforcing against National Association for Gun Rights, Inc and all of its members the provisions in 27 C.F.R. §§ 478.11 and 479.11 that the Court has preliminarily determined are unlawful and that the United States Court of Appeals for the Fifth Circuit has determined are unlawful.

The injunctive relief shall not extend to any individual prohibited from possessing firearms under 18 U.S.C. § 922 (g). The injunctive relief shall take effect immediately and

remain in effect pending the conclusion and final disposition of all claims and causes of action

before the Court in these review proceedings. 5 U.S.C. § 705.

     The Court waives the security requirement of Federal Rule of Civil Procedure 65(c). *See*

*Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996).[13]

     **SO ORDERED** on this **4th day** of **October, 2023**.

 

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[13] Because neither party raises the security requirement in Rule 65(c), no security is ordered. *See* FED. R. CIV. P. 65(c).